126 T.C. No. 13

UNITED STATES TAX COURT

LOUIS A. AND CHRISTINE COX, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21733-03L, 14693-04L.    Filed May 3, 2006.

Ps' 1999 and 2000 taxable years became the subject
of IRS collection activity through issuance of notices
of intent to levy.  Appeals Officer S thereafter
conducted a simultaneous equivalent hearing with
respect to 1999 and collection hearing pursuant to sec.
6330, I.R.C., with respect to 2000.  A principal focus
during that proceeding was the availability of
collection alternatives.  The Appeals Office sustained
the proposed collection activity in November of 2003.
Meanwhile, Ps' 2001 and 2002 taxable years had likewise
become the subject of a notice of intent to levy.  Ps'
request for a hearing regarding these years was
assigned to S, who began his consideration thereof in
early 2004.  Collection alternatives were again a
primary issue raised.  Following a hearing with S, a
notice of determination sustaining the proposed levy
action was issued in July of 2004.

Held:  The administrative record and notices of
determination underlying these cases are sufficient to
support meaningful judicial review.

Held, further, the Appeals officer was not
disqualified from conducting the collection hearing for
2001 and 2002 on account of prior involvement within
the meaning of sec. 6330(b)(3), I.R.C., nor does the
record otherwise call into question his impartiality.

Held, further, because the record does not show any
abuse of discretion, R's determinations to proceed with
collection action, except to the extent modified by
settlements between the parties, are sustained.


Theodore H. Merriam and Kevin A. Planegger, for petitioners.

Frederick J. Lockhart, Jr., for respondent.


OPINION


WHERRY, Judge:  These consolidated cases arise from
petitions for judicial review filed in response to Notices of
Determination Concerning Collection Action(s) Under Section 6320
and/or 6330.[1]  The issue for decision is whether respondent may
proceed with collection of income tax liabilities for years 2000,
2001, and 2002.

---

[1]  Unless otherwise indicated, section references are to
the Internal Revenue Code of 1986, as amended, and Rule
references are to the Tax Court Rules of Practice and Procedure.

Background

These cases were submitted fully stipulated pursuant to Rule 122.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

Petitioners are husband and wife.  Petitioner Louis A. Cox (Mr. Cox) is a consulting engineer and software developer.  Throughout the years in issue, he operated a sole proprietorship providing engineering and software services under the name of Cox Associates.  In addition, in 2001 and 2002, Mr. Cox also provided consulting services through Cox Associates, Inc., an S corporation.  Mr. Cox and petitioner Christine Cox (Mrs. Cox) each held a 50-percent stock ownership interest in this corporation.  Generally, the corporation handled larger projects involving subcontractors and/or government contracts.  Smaller projects were handled through the sole proprietorship.  Mrs. Cox provided accounting, bookkeeping, and administrative services for the businesses.

Following an extension of time, petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 1999 in October of 2000.  They reported adjusted gross income of $325,748, taxable income of $276,971, total tax of $101,094, total payments of $1,000, and an amount owed (after an addition of $4,222 from Form 2210, Underpayment of Estimated Tax by

Individuals, Estates and Trusts) of $104,316.  The return was not accompanied by payment.

The Internal Revenue Service (IRS) assessed the reported amounts for 1999, as well as further additions to tax and interest, on November 11, 2000, and sent petitioners a notice of balance due.  Petitioners apparently entered into an installment agreement in December of 2000 and made a number of payments, but an assessed balance remained at the termination of the agreement. On March 14, 2002, a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing, was issued to petitioners for 1999.

Petitioners filed a joint Form 1040 for 2000 on April 12, 2002.  They reported adjusted gross income of $442,932, taxable income of $381,450, total tax of $145,393, no payments, and an amount owed (with addition as in 1999) of $151,954.  Again no payment accompanied the return.  Assessment of the reported amounts, along with additions to tax and interest, was made on May 20, 2002, and a notice of balance due was sent on that date.

On October 31, 2002, the IRS issued to petitioners a Final Notice - Notice of Intent To Levy and Notice of Your Right to a Hearing, with respect to their 2000 liability.  On November 27, 2002, petitioners' representative, Theodore H. Merriam (Mr. Merriam) submitted to the IRS two Forms 12153, Request for a Collection Due Process Hearing, one pertaining to 1999 and the

other to 2000.  With each he enclosed an attachment explaining petitioners' disagreement with the proposed levy.  Cover materials from Mr. Merriam communicated an understanding that the Form 12153 for 1999 would be treated as a request for an "equivalent" hearing.  With respect to both years, petitioners sought less intrusive methods of collection, "including but not limited to * * * an installment agreement or an offer in compromise", and requested abatement of delinquency additions to tax.

By a letter dated May 23, 2003, Bruce H. Skidmore (Mr. Skidmore), the Appeals officer to whom petitioners' case had been assigned, scheduled a hearing for June 18, 2003, and provided general information concerning the requisites for an installment agreement or offer-in-compromise.  The letter noted that consideration of collection alternatives required taxpayers to be in current compliance with filing and payment obligations and to submit current financial information; i.e., Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and/or Form 433-B, Collection Information Statement for Businesses.  The hearing was twice rescheduled at petitioners' request, on grounds of needing more time to prepare and submit returns for 2001 and 2002 and Forms 433-A and B.  A telephone conference was eventually set for August 12, 2003.

Meanwhile, on July 24, 2003, petitioners filed a Form 1040 for 2001. The return reported adjusted gross income of $190,054, taxable income of $104,746, total tax of $38,175, total payments of $6,000, and an amount owed (after a $1,511 Form 2210 addition) of $33,686. No payment was made with the return. Amounts due, with further additions to tax and interest, were assessed on September 8, 2003, at which time a notice of balance due was sent.

The scheduled telephone conference for 1999 and 2000 was conducted on August 12, 2003. The participants discussed the changing nature of petitioners' business and their financial circumstances. To wit, Mr. Cox's consulting endeavors had previously focused on the telecommunications industry, where work had since "dried up" due to the economic downturn. He was at that time soliciting a more diversified clientele, but contracts were smaller and income reduced. It was agreed that petitioners would provide Forms 433 by the end of August for the consideration of collection alternatives, and options discussed included an offer-in-compromise or currently not collectible status.

On August 28, 2003, Mr. Merriam telephoned Mr. Skidmore to request 3 more weeks to submit financial information and to communicate that petitioners' 2002 Form 1040 had been mailed. The return for 2002 was timely filed, pursuant to extensions,

when it was received on August 29, 2003. The return reported adjusted gross income of $464,889, taxable income of $423,722, total tax of $146,460, total payments of $487, and an amount owed (again including a $1,569 Form 2210 addition) of $147,542. No payment was submitted with the return. Amounts due, with additions to tax and interest, were assessed on October 6, 2003, and a notice of balance due was sent.

On September 19, 2003, Kevin A. Planegger (Mr. Planegger), another representative of petitioners' employed at the same firm as Mr. Merriam, sent two letters to Mr. Skidmore. One presented explanation and reasoning with respect to petitioners' request that additions to tax for 2000 be abated. The other asked that petitioners be granted a further extension to October 3, 2003, to provide financial and collection information. Mr. Planegger also called on October 1, 2003, and requested still more time.

Mr. Skidmore then sent a letter dated October 16, 2003, setting a deadline of October 27, 2003, for "full and complete financials" from petitioners and addressing the arguments that petitioners had proffered concerning the additions to tax. On October 27, 2003, Mr. Planegger sent to Mr. Skidmore a completed Form 433-A for petitioners and Form 433-B for Cox Associates, Inc., each signed on October 24, 2003, as well as a letter discussing certain of the income and expense items reflected thereon. The Form 433-A showed monthly income of $14,457 and

expenses of $14,648. The expenses included housing and utility costs of $7,081, attributable to multiple mortgages overencumbering petitioners' residence (valued at $900,000 in the Form 433-A), and life insurance costs of $2,959. The cover letter explained that the home secured indebtedness obtained to finance petitioners' business activities and that the life insurance on Mr. Cox's life was a condition for such financing. The Form 433-B incorporated an attached profit and loss statement for January through July of 2003 showing total income of $139,261 and expenses of $137,361.10, resulting in net income of $1,899.90.

Mr. Skidmore reviewed the information submitted and documented his analysis in extensive notes. By a letter dated October 31, 2003, he communicated to petitioners his preliminary conclusions and underlying concerns with respect to current compliance, to claimed expenses and his inability to reconcile amounts on the Forms 433 with bank and financial statements provided, and to collection alternatives. Mr. Planegger spoke with Mr. Skidmore by telephone on November 10, 2003, and requested to have until the end of the month to prepare a response to the letter. Mr. Skidmore indicated that with the delays to date he was inclined to proceed but would look at anything received while the case was still in his hands.

Mr. Skidmore completed his consideration and calculated monthly net income of $8,550 (total income of $14,457 less allowable expenses of $5,907), for a collection potential from petitioners' future income over 60 months of $513,000, plus net realizable equity in assets of $34,161. In this computation, Mr. Skidmore allowed only standard housing expenses of $1,299 as documentation relating to the $7,081 was unclear and the cost of maintaining a home was not converted to a business expense merely by use as security for alleged business loans. He also disallowed the life insurance expenses as nothing showed that it was not a personal asset benefiting petitioners and completely under their control. Mr. Skidmore did not find that any collection alternatives were appropriate on the record presented, but he did conclude that the addition to tax for failure to file timely for 1999 should be abated.

On November 17, 2003, petitioners sent a letter to Mr. Skidmore responding to the conclusions in his October 31, 2003, letter. Therein they presented further argument regarding compliance, housing expenses, and collection alternatives. They emphasized their alleged efforts to return to compliance, defended their housing costs or alternatively requested a year to modify any expenses deemed excessive, and repeatedly advocated for placement of their accounts in "currently uncollectible status", acknowledging that neither an installment agreement nor

an offer-in-compromise was a viable option in their circumstances.[2]

On November 25, 2003, the IRS issued to petitioners a Decision Letter Concerning Equivalent Hearing Under Section 6320 and/or 6330 of the Internal Revenue Code with respect to 1999, sustaining the proposed levy collection action but abating the late filing addition. Likewise, also on November 25, 2003, a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 was issued to petitioners with respect to 2000.[3] The notice summarized the determination as follows:

_____

[2] It appears from the record that the Nov. 17, 2003, letter may have been received by the IRS after Mr. Skidmore completed his consideration of petitioners' 1999 and 2000 case. However, as indicated infra, the substance of the information therein was fully considered by Mr. Skidmore in conjunction with his subsequent review of petitioners' 2001 and 2002 tax years and did not alter (and thus would not as to 1999 and 2000 have altered) his conclusions. Any timing issues are immaterial on these facts.

[3] It appears from the administrative file that the IRS prepared two notices of determination dated Nov. 25, 2003, with respect to petitioners' 2000 tax year. The notices are identical except for the certified mail numbers handwritten on the first pages and the fact that one is signed by Appeals Team Manager Marianne Hudson and the other is signed by Appeals Team Manager Wesley D. Anderson. It is unclear if both were sent to petitioners. Perhaps, despite being addressed to both petitioners, one was intended for Mr. Cox and the other for Mrs. Cox. In any event, petitioners attached the notice signed by Marianne Hudson to their petition for 2000, and it is that notice that the parties annexed to the stipulation of facts and stipulated was the document upon which the case at docket No. 21733-03L was based. Consistent with the parties' approach, the Court will treat the stipulated notice as the operative document for purposes of this proceeding and will disregard the possible
(continued...)

Your lack of current tax compliance defeated the
finding of collection alternatives, and the financial
information you provided indicated an ability to make
significant payments on the outstanding tax, if not
fully pay it over the next few years.  You did not
evidence that a levy would be overly intrusive.  You
did not show reasonable cause for penalty abatement.

Petitioners filed a petition with this Court challenging the

November 25, 2003, determination on December 22, 2003, at which

time they resided in Denver, Colorado.

In the meantime, on October 20, 2003, the IRS had issued to

petitioners a Final Notice - Notice of Intent To Levy and Notice

of Your Right to a Hearing with respect to 2001 and 2002.

Petitioners timely submitted a Form 12153, received by the IRS on

November 19, 2003, in response to the notice of intent to levy.

An attachment explaining their disagreement essentially reprised

(almost verbatim) the points made in their November 17, 2003,

letter to Mr. Skidmore and focused on a request for placement of

their accounts in currently not collectible status.

This case was again assigned to Mr. Skidmore.  By a letter

dated April 8, 2004, Mr. Skidmore offered a hearing to be held on

April 27, 2004.  On April 20, 2004, petitioners' representative

called and requested that Mr. Skidmore recuse himself and have a

different Appeals officer handle the 2001 and 2002 case on

account of Mr. Skidmore's work on prior years.  Upon review of

---

[3](...continued)
second copy.

that request with a supervisor, it was determined that reassignment was not required and would only create delay. Mr. Skidmore contacted petitioners' representative with the foregoing information, and the two scheduled a telephonic hearing for May 19, 2004.

On May 19, 2004, Mr. Planegger called and, pursuant to his request for more time to complete updated Forms 433-A and 433-B, the hearing was rescheduled for June 8, 2004. In a followup letter of the same date, Mr. Planegger confirmed the hearing appointment and a June 4, 2004, deadline to submit updated financial information. The letter also reiterated objection to Mr. Skidmore's consideration of the case. After two additional requests from petitioners' representative to postpone, the hearing was reset for June 22, 2004, with the revised financial data to be provided by June 18.

Under cover of a letter dated June 17, 2004, petitioners sent a profit and loss statement for Cox Associates, Inc., showing a net loss of $12,996.81 during the January through April 2004 period, an income statement for Mr. Cox's sole proprietorship showing a net loss of $2,094 for the same period, a purported "Personal Balance Sheet" for petitioners, and copies of various bank statements. The letter stated that petitioners' assets and liabilities had not changed since Forms 433-A and 433-

B were submitted the previous year, and no revised forms were provided.

Mr. Skidmore again documented his consideration of and concerns with the information provided in extensive notes.  He noted the uncorroborated or unexplained nature of much of what was supplied, an inability to reconcile various claimed figures with the documentation, the high cashflow through and commingling between bank accounts, the apparent failure to make lifestyle changes to reduce expenses since requesting a year to do so in November of 2003, and the seemingly continued problems with filing and payment requirements.  These concerns were discussed at the ensuing hearing conducted on June 22, 2004.

On July 13, 2004, a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 was issued to petitioners with respect to 2001 and 2002.  The notice summarized the determination:  "The only issue you raised for consideration was that you be found to be currently not collectible.  The financial information you provided did not establish that.  There were no procedural errors found, neither was it found that a levy would be overly intrusive."  Petitioners' petition challenging this notice, having been timely mailed, was filed on August 16, 2004, at which time they continued to reside in Denver, Colorado.

Each petition raised a number of largely identical assignments of error, disputing the conclusions in the

determinations as to: (1) Intrusiveness of the proposed collection actions; (2) current tax law compliance; (3) ability to pay and interpretation of submitted financial information; (4) availability of currently not collectible status for unpaid liabilities; (5) abatement of delinquency additions to tax; and (6) adequacy of the administrative record for judicial review. With respect to the proceeding for 2001 and 2002, petitioners also alleged that they were denied their right to a fair hearing before an impartial Appeals officer with no prior involvement in the case.

As previously indicated, these cases were submitted fully stipulated. In conjunction with that submission, the parties filed a stipulation of settled issues in which they agreed to additions to tax under section 6651(a)(1) for taxable years 2000 and 2001 to the extent of 50 percent of the amounts assessed and to abatement of the remaining 50 percent for each year.

## Discussion

### I. Collection Actions--General Rules

Section 6331(a) authorizes the Commissioner to levy upon all property and rights to property of a taxpayer where there exists a failure to pay any tax liability within 10 days after notice and demand for payment. Sections 6331(d) and 6330 then set forth procedures generally applicable to afford protections for taxpayers in such levy situations. Section 6331(d) establishes

the requirement that a person be provided with at least 30 days' prior written notice of the Commissioner's intent to levy before collection may proceed.  Section 6331(d) also indicates that this notification should include a statement of available administrative appeals.  Section 6330(a) expands in several respects upon the premise of section 6331(d), forbidding collection by levy until the taxpayer has received notice of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals.  Section 6330(b) grants a taxpayer the right to a fair hearing before an impartial Appeals officer upon request.

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;
>
> (ii) challenges to the appropriateness of collection actions; and

(iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows the taxpayer to seek judicial review in the Tax Court or a District Court, depending upon the type of tax. In considering whether taxpayers are entitled to any relief from the Commissioner's determination, this Court has established the following standard of review:

where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

II. Analysis

A. Adequacy of the Administative Record and Notices of Determination

Petitioners raise certain alleged procedural defects that they argue preclude legitimate judicial review of the administrative proceedings. The thrust of their argument appears

to be that the absence of a more formal record of the hearing or any significant administrative record, coupled with vague and conclusory notices of determination, prevents meaningful review.

As this Court has noted on a number of occasions, hearings conducted under sections 6320 and 6330 are informal proceedings, not formal adjudications. Katz v. Commissioner, 115 T.C. 329, 337 (2000); Davis v. Commissioner, 115 T.C. 35, 41 (2000). There inheres no right to subpoena witnesses or documents in connection with these hearings. Roberts v. Commissioner, 118 T.C. 365, 372 (2002), affd. 329 F.3d 1224 (11th Cir. 2003); Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002); Davis v. Commissioner, supra at 41-42. Taxpayers are entitled to be offered a face-to-face hearing at the Appeals Office nearest their residence. Where the taxpayer declines to participate in a proffered face-to-face hearing, hearings may also be conducted by telephone or correspondence. Katz v. Commissioner, supra at 337-338; Dorra v. Commissioner, T.C. Memo. 2004-16; sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs. Furthermore, once a taxpayer has been given a reasonable opportunity for a hearing but has failed to avail himself or herself of that opportunity, we have approved the making of a determination to proceed with collection based on the Appeals officer's review of the case file. See, e.g., Taylor v. Commissioner, T.C. Memo. 2004-25, affd. 130 Fed. Appx. 934 (9th Cir. 2005); Leineweber v.

Commissioner, T.C. Memo. 2004-17; Armstrong v. Commissioner, T.C.

Memo. 2002-224; Gougler v. Commissioner, T.C. Memo. 2002-185;

Mann v. Commissioner, T.C. Memo. 2002-48.

The Court has also ruled that taxpayers are entitled,

pursuant to a request made under section 7521(a)(1), to audio

record section 6330 hearings.  Keene v. Commissioner, 121 T.C. 8,

19 (2003).  Nonetheless, we have never held or implied that any

particular type of record is a necessary prerequisite for

meaningful review.  Rather, our precedent and the administrative

records underlying each of those proceedings counsel that a broad

continuum exists in terms of the evidence we have found

sufficient to support judicial consideration.

Furthermore, precedent from other courts speaks with like

import.  The Court of Appeals for the Sixth Circuit dealt with

this issue at some length in Living Care Alternatives of Utica,

Inc. v. United States, 411 F.3d 621 (6th Cir. 2005).

Acknowledging that the record in collection cases is in many

instances "surprisingly scant", the court nonetheless went on to

explain:  "No transcript or official record of the hearing is

required and, accordingly, one rarely exists."  Id. at 625.

The Courts of Appeals for the First and Eighth Circuits have also

generally endorsed this view.  Robinette v. Commissioner, 439

F.3d 455, 459, 461-462 (8th Cir. 2006), revg. on other grounds

123 T.C. 85 (2004); Olsen v. United States, 414 F.3d 144, 150-151

(1st Cir. 2005). Petitioners look to <u>Mesa Oil, Inc. v. United States</u>, 86 AFTR 2d 2000-7312, at 2000-7317, 2001-1 USTC par. 50,130, at 87,101 (D. Colo. 2000), for support, but even the District Court in that case stated:

> The government is correct that these rulings and provisions support the informal nature of the hearing. Yet informality does not completely obviate the need for a record of some sort. While a full stenographic record is not required, there must be enough information contained in the documentation created by the IRS for a court to draw conclusions about statutory compliance and whether the AO abused his or her discretion. * * *

Here, the parties have stipulated and included in the record the full Appeals Office administrative file, including the collection function investigative file incorporated therein, for each of the years in issue. These materials contain extensive contemporaneous notes by IRS personnel as well as the correspondence between the parties. Mr. Skidmore's notes of what transpired at the section 6330 hearings are a notable feature of this compendium. Taken together, the assemblage provides a singularly clear portrayal of administrative developments as they occurred. In addition, petitioners do not contend ever to have made a request under section 7521 to record the hearing. On the facts of these cases, the Court is satisfied that the administrative record is adequate for proper judicial review. See <u>Living Care Alternatives of Utica, Inc. v. United States</u>, <u>supra</u> at 629-630 (distinguishing <u>Mesa Oil, Inc. v. United States</u>,

supra); Olsen v. United States, supra at 155-156 (concluding that an administrative record containing an offer-in-compromise, the Appeals officer's communications and the taxpayer's responses, and the Appeals officer's conclusions was sufficient); see also Robinette v. Commissioner, supra at 461-462 (agreeing with Olsen v. United States, supra).

A similar conclusion is warranted with respect to petitioners' related assertion that the notices of determination are too vague and conclusory to comport with, and to facilitate judicial review consistent with, due process.  Petitioners complain that the notices lack a cogent explanation of the Appeals officer's analysis showing how he considered and weighed all of the evidence and issues raised by petitioners.

Section 6330(c)(3) provides that a determination for purposes of the statute must take into account:  (1) Verification that requirements of applicable law and procedure have been met; (2) issues raised by the taxpayer at the hearing; and (3) whether the proposed collection action balances the need for efficient collection with concern that collection be no more intrusive than necessary.  Regulations elaborate as follows:

> The Notice of Determination will set forth Appeals'
> findings and decisions.  It will state whether the IRS
> met the requirements of any applicable law or
> administrative procedure; it will resolve any issues
> appropriately raised by the taxpayer relating to the
> unpaid tax; it will include a decision on any
> appropriate spousal defenses raised by the taxpayer; it
> will include a decision on any challenges made by the

taxpayer to the appropriateness of the collection action; it will respond to any offers by the taxpayer for collection alternatives; and it will address whether the proposed collection action represents a balance between the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.  The Notice of Determination will also set forth any agreements that Appeals reached with the taxpayer, any relief given the taxpayer, and any actions the taxpayer or the IRS are required to take. Lastly, the Notice of Determination will advise the taxpayer of the taxpayer's right to seek judicial review within 30 days of the date of the Notice of Determination.  [Sec. 301.6330-1(e)(3), A-E8(i), Proced. & Admin. Regs.]

The notices of determination precipitating these cases expressly address verification of legal and procedural requirements, issues raised, and balancing of efficiency and intrusion.  While petitioners would apparently like to see even greater detail, the discussions provided as to each of the foregoing components are sufficient to enable the Court to follow the Appeals officer's reasoning and conclusions.  Furthermore, the Court is mindful that a notice of determination, as a single, relatively succinct document following an often lengthy administrative process, must necessarily be to some degree summary in nature.

For example, petitioners direct our attention to the fact that they offered collection alternatives, including an offer-in-compromise and currently not collectible status, and argue that Mr. Skidmore failed adequately to address these issues in the notices of determination.  They emphasize that the November 25,

2003, notice does not mention currently not collectible status. However, both notices discuss collection alternatives and highlight specific reasons why these were rejected.  Although the November 25, 2003, notice does not use the words "currently not collectible status", it enumerates particular problems with respect to petitioners' ability to qualify for "an Offer in Compromise or other collection alternative", and the grounds listed are patently relevant to evaluation of currently not collectible status.  In point of fact, the majority of petitioners' complaints about the notices would seem to relate more to the possibility of an abuse of discretion, and hence will be dealt with <u>infra</u>, than to the legal sufficiency of the documents.

The Court concludes that both the administrative record and the notices of determination are sufficient to support judicial review.[4]

---

[4] We note that we do not decide or reconsider whether we are limited to the administrative record in conducting our review, as that is not at issue in these cases.

B.  Impartiality of the Appeals Officer

Petitioners have, throughout the administrative and litigation process, consistently objected to the consideration of their 2001 and 2002 years by Mr. Skidmore on grounds of prior involvement.  Section 6330(b)(3) subsumes in the statutory right to a fair hearing the requirement of an impartial officer:  "The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320.  A taxpayer may waive the requirement of this paragraph."  Petitioners' position is that Mr. Skidmore's looking into their 2001 and 2002 liabilities in connection with his handling of the 1999 and 2000 years constitutes disqualifying prior involvement.  They also allege more generally that prejudice engendered by his prior dealings with them prevented Mr. Skidmore from taking an unbiased look at their 2001 and 2002 years.

With respect to the key phrase "prior involvement", regulations amplify the statutory language as set forth below:

> Q-D4.  What is considered to be prior involvement by an employee or officer of Appeals with respect to the tax and tax period or periods involved in the hearing?

> A-D4.  Prior involvement by an employee or officer of Appeals includes participation or involvement in an Appeals hearing (other than a CDP hearing held under either section 6320 or section 6330) that the taxpayer may have had with respect to the tax and tax periods

shown on the CDP Notice. [Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs.]

Hence, both the statutory and the regulatory language suggest a relatively permissive standard under which participation in earlier collection proceedings would not constitute disqualifying prior involvement for purposes of section 6320 or 6330. Legislative history is supportive of such a construction, providing:

> The conferees anticipate that the IRS will combine Notice of Intent to Levy and Notice of Lien hearings whenever possible. If multiple hearings are held, it is expected that, to the extent practicable, the same appellate officer will hear the taxpayer with regard to both lien and levy issues. If the taxpayer requests a hearing following receipt of a Notice of Lien or Notice of Intent to Levy and, prior to the date of the hearing, receives the other notice, the scheduled hearing will serve for both purposes and the taxpayer is obligated to raise all relevant issues at such hearing. [H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 747, 1020.]

Thus, given the above authorities, there can be little doubt that some form of exception to the bar on prior involvement is countenanced and intended for participation in earlier collection proceedings. However, by their terms, the foregoing appear to be directed toward multiple proceedings where the same year or years are specifically the subject of the collection actions. Proper application to proceedings where different tax periods are in issue is less explicit.

Caselaw, too, offers only limited guidance. This Court has characterized the policy of the bar as follows: "The

impartiality requirement ensures that a hearing officer has had no prior involvement in the determination and assessment of the underlying tax liability that is the subject of the hearing." Criner v. Commissioner, T.C. Memo. 2003-328. Our dispositions to date have relied principally on the fact that the Appeals employee personally "did not participate in, and was not involved in, any previous Appeals Office hearing" concerning the tax periods that were the subject of those cases. Day v. Commissioner, T.C. Memo. 2004-30; Harrell v. Commissioner, T.C. Memo. 2003-271. Our cases have not explored the contours of the exception for prior involvement in earlier section 6320 or 6330 proceedings.

Nor is jurisprudence from other courts particularly enlightening. Few cases seem to address the meaning of prior involvement, much less in the context in which it is framed here. Moreover, some of what little exists is at least arguably more restrictive than the statute itself and, accordingly, offers minimal assistance. For example, in Cox v. United States, 345 F. Supp. 2d 1218, 1224 (W.D. Okla. 2004), the District Court remanded a case to Appeals on unrelated procedural grounds with the following instruction: "The court finds that, at least in the circumstances presented here, the statute's requirement that the presiding officer must have had no prior involvement with the unpaid tax disqualifies the original appeals officer from re-

hearing the matter."  The court does not mention the statutory

exception for an Appeals officer's involvement in other section

6320 or 6330 proceedings concerning a taxpayer.  Mesa Oil, Inc.

v. United States, 86 AFTR at 2000-7316 to 7317, 2001-1 USTC par.

50,130 at 87,100 to 87,101, can be read to imply that even

reviewing the IRS administrative file before contacting the

taxpayer for a hearing might constitute disqualifying prior

involvement.  Yet any such prohibition would seem to infringe

upon realities of the administrative process and possibly even

other requirements of the statute itself; e.g., those pertaining

to verification.

Against this backdrop, the Court cannot conclude that the

situation now before us represents the type of harm that the

restriction on prior involvement was intended to prevent.  Two

potential rationales, both drawn from the language of the statute

and regulations, lead to this result.  First, as a technical

matter, the subsequent years have never been the subject of;

i.e., been directly in dispute in, a proceeding before the IRS.

To the extent that there has never technically been a proceeding

concerning the later years, a fortiori there cannot have been

disqualifying involvement in a proceeding by IRS personnel.  The

regulatory definition in particular, phrased in terms of an

earlier "Appeals hearing  * * * with respect to the tax and tax

periods", suggests that prior involvement contemplates a

situation where the specific year or years were the explicit target of an administrative proceeding. See sec. 301.6330-1(d)(2), A-D4, Proced. & Admin. Regs. Stated otherwise, the regulations indicate that prior involvement as used in the section 6330 context does not arise where consideration of later years was peripheral to a proceeding the subject of which was an earlier year or years.

Second, from a practical standpoint, the law clearly permits multiple collection hearings with respect to a given period to be conducted by the same Appeals officer when that period is, for example, the subject of multiple notices under section 6320 and/or 6330. Logically, then, it is difficult to argue that an appreciably greater or different harm could ensue where a period is first considered informally in the course of one collection proceeding initiated regarding another period and then becomes the direct subject of a subsequent proceeding. It would make little substantive sense to have operation of the exception turn on mere coincidences of timing in the issuance of the various actionable notices.

In addition, given the practical realities that collection problems often develop or continue serially over a number of years and that many Appeals Offices are small with limited staff, a construction that could progressively disqualify an entire office vis-a-vis a taxpayer with multiple years in arrears would

be unworkable.  Likewise, since much of the relevant information would remain unchanged regardless of the period under consideration, wasteful redundancy could be sanctioned by too narrow a reading of the exception, and the avoidance thereof likely formed part of the reasoning behind inclusion of the exception in the statute.  Accordingly, the Court concludes that Mr. Skidmore's consideration of the 2001 and 2002 years during the collection hearing process concerning 2000 did not lead to disqualification on grounds of prior involvement as that terminology is used in section 6330(b)(3).

The foregoing conclusion does not, however, necessarily end the inquiry with respect to a potential violation of section 6330(b)(3).  The question remains as to whether the provision also incorporates a general requirement of impartiality, in the sense of no prejudice or bias, that might have been transgressed on these facts.  The Court has spoken briefly to this point in the context of a lien action under section 6320:

> Section 6320(b)(3) limits the definition of "impartial officer" * * *, and that definition does not address, and arguably does not permit, a challenge to the objectivity of the hearing officer who presides over a hearing under sections 6320 and 6330.  However, we shall assume without deciding, for purposes of this analysis, that sections 6320 and 6330 permit a challenge in appropriate cases to a demonstrably biased hearing officer.  See secs. 6320(c), 6330(c)(2)(A) (A person may raise at the hearing any relevant issue relating to the proposed collection action including the enumerated issues).  [Criner v. Commissioner, T.C. Memo. 2003-328.]

Taking the same approach of assuming arguendo that a claim advancing prejudice is colorable under the section, we again find it unnecessary to decide the underlying issue of statutory construction in that petitioners' allegations of bias are not borne out by the totality of the record. Petitioners highlight two factual circumstances in support of their position. First, petitioners focus on a reference to "a baseless claim for inflated housing and insurance costs" in notes made by Mr. Skidmore on April 26, 2004, recording his activity in processing the 2001 and 2002 case. The April 26, 2004, entry reads, in relevant part:

> Review of the case for 1999-2000 (closed five months ago) found that the issues raised were collection alternatives, and that they qualified for none because they made a baseless claim for inflated housing and insurance costs in an effort to show they had no ability to pay, seeking to justify a lifestyle at the expense of the government. Specifically, it was concluded that "You did not provide sufficient financial information so that these could be specifically evaluated, but what you did provide evidenced two significant problems: (1) The testimony provided indicated no projection of future income could now be made with confidence in its accuracy. This would defeat the making of a projection of your future ability to pay. It is suggested that you again consider these alternatives after your new business income has a sufficient history upon which to base projections. (2) Analysis of your income and expenses showed large discretionary income which could be applied to your tax liabilities." I called the Rep. to inquire if they had different issues for 2001-2002, and what they wished to do about the scheduled hearing * * *

Thus, while the remark complained of by petitioners may sound harsh standing alone, it was made in the context of a review which went on to consider and accurately to summarize the particular reasons for the result reached in the earlier matter. Moreover, as the facts found above indicate, Mr. Skidmore then proceeded to grant repeated requests from petitioners for more time to prepare for the hearing and to submit updated financial information. His notes also document and discuss his analysis of the financial materials ultimately provided by petitioners, commenting in detail about specific items and why they continued to fall short of establishing petitioners' qualification for collection alternatives. This accommodation of petitioners' scheduling needs and careful review of the particular evidence offered indicates a willingness to consider anew the merits of petitioners' then-existing circumstances and is the antithesis of prejudgment.

The second factual point emphasized by petitioners in their quest to show bias is the timing of Mr. Skidmore's conclusion that a determination letter should be issued; i.e, that the decision was made on the same day as the hearing was held. Again, however, the record reveals nothing inappropriate. Petitioners submitted their financial documentation prior to the hearing and offered nothing further at the conference that would justify delay for additional review. Mr. Skidmore's notes with

regard to the hearing, conducted with petitioners'

representative, close as follows:

> We discussed the financials and my conclusions.  He
> could name no specific modifications to expenses.  He
> had no response to my statement that it appeared the
> 941s were overdue.  We agreed this TP needed an OIC,
> but I explained why he could not qualify now.  Rep.
> said he agreed they would have to look down the road
> for an OIC in the future.  He wanted a Determination
> Letter, and will surely appeal to Tax Court, just for
> delay.  He did not name any respect in which he
> disagreed with my findings.

On this record, and even assuming that section 6330(b)(3)

subsumes a requirement of impartiality in a broad or generalized

sense, the Court is satisfied that Mr. Skidmore conducted a

thorough review of the 2001 and 2002 years that belies

allegations of being tainted by prejudice.

C.    Appropriateness of the Collection Determinations

Having concluded that alleged procedural shortcomings do not

preclude judicial review or otherwise invalidate the

determinations at issue, the Court turns to whether the

determinations to proceed with collection should be sustained on

the merits.  At the outset, it should be reiterated that with the

settlement by the parties of the controverted additions to tax,

no issue of underlying liability remains in dispute.

Accordingly, we review respondent's determinations to proceed

with collection for abuse of discretion.  Action constitutes an

abuse of discretion under this standard where arbitrary,

capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioners contend that the determinations generating these cases evince an abuse of discretion on three principal grounds: (1) Failure to satisfy the verification requirement of section 6330(c)(3)(A); (2) failure to address or properly to evaluate all issues raised by petitioners per the mandate of section 6330(c)(3)(B); and (3) failure properly to weigh intrusion per section 6330(c)(3)(C). Respondent disagrees with each claim.

Section 6330(c)(3)(A) incorporates a directive that the determination take into consideration the section 6330(c)(1) "verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." The referenced requirements are not further illuminated by statute or regulation. The Court has repeatedly rejected challenges based on this provision where the Appeals officer had secured formal or informal transcripts showing both that the subject taxes were properly assessed and that the taxpayer had been notified of those assessments through issuance of notices of balance due. Burke v. Commissioner, 124 T.C. 189, 194-195 (2005); Roberts v. Commissioner, 118 T.C. at 371 n.10; Nestor v. Commissioner, 118 T.C. at 166; Lunsford v. Commissioner, 117 T.C. 183, 188 (2001). Mr. Skidmore did so here.

Petitioners maintain, however, that more is demanded.  They rely on the following passage from legislative history:

> During the hearing, the IRS is required to verify that all statutory, regulatory, and administrative requirements for the proposed collection action have been met.  IRS verifications are expected to include (but not be limited to) showings that:
> (1) the revenue officer recommending the collection action has verified the taxpayer's liability;
> (2) the estimated expenses of levy and sale will not exceed the value of the property to be seized;
> (3) the revenue officer has determined that there is sufficient equity in the property to be seized to yield net proceeds from sale to apply to the unpaid tax liabilities; and
> (4) with respect to the seizure of the assets of a going business, the revenue officer recommending the collection action has thoroughly considered the facts of the case, including the availability of alternative collection methods, before recommending the collection action.  [H. Conf. Rept. 105-599, at 264 (1998), 1998-3 C.B. 747, 1018.]

According to petitioners, the fourth enumerated item is applicable to their circumstances.  They contend that it imposes an "elevated review" and was improperly ignored in the determinations.

The difficulty with petitioners' position is that the statute as enacted requires by its terms verification "that the requirements of any applicable law or administrative procedure have been met."  Sec. 6330(c)(1).  Petitioners have alerted us to no law or administrative procedure that would direct revenue officers to engage in the specific analysis suggested, much less

document such analysis in a manner or form that would enable objective verification thereof by an Appeals officer in some future proceeding.  Moreover, the structure of section 6330 as enacted is such that the Appeals officer is expressly instructed to consider collection alternatives, presumably de novo, and courts are granted jurisdiction to review the Appeals officer's exercise of discretion, not that of an earlier revenue officer. Petitioners' approach does not harmonize with the language of the statute.  The Court concludes that the verification requirement was met on the facts of these cases.

Petitioners also advance complaints with respect to the Appeals officer's consideration of issues they raised in connection with the hearing.  These complaints, apparently seeking to show contravention of section 6330(c)(3)(B), center on the interrelated categories of compliance and collection alternatives.  Regarding compliance, neither party disputes that current compliance with tax laws is generally considered a prerequisite, under established IRS policy, of eligibility for collection alternatives.  See, e.g., Rodriquez v. Commissioner, T.C. Memo. 2003-153; Londono v. Commissioner, T.C. Memo. 2003-99; Tabak v. Commissioner, T.C. Memo. 2003-4.  Nor is there any material disagreement that petitioners' compliance record for the years in issue was, in petitioners' words, "not exemplary" or, in respondent's characterization, "abysmal".  Petitioners argue,

however, that respondent has improperly focused on past, as opposed to current, compliance; that petitioners were in at least "substantial" compliance with their Federal tax obligations for 2003 forward; and that their noncompliance for earlier years was justified by circumstances beyond their control. Hence, they maintain that Mr. Skidmore improperly relied on noncompliance in support of his determinations.

Undoubtably, the administrative record shows that Mr. Skidmore looked in detail at the filing and payment history for the years in issue. Such a review would seem to be inherent in the very nature of the proceedings and does not raise a spectre of impropriety. The fact that he may also have believed erroneously that returns for 1996, 1997, and 1998 were filed late likewise does not eliminate the possibility that he may have appropriately relied on current noncompliance in recommending that levy action be sustained. More salient is the fact that his notes and the communications sent to petitioners reflect an ongoing concern with failure to make sufficient provision for estimated taxes.

When petitioners filed their 2003 return in August of 2004, pursuant to an extension, they reported tax of $22,508 but only $414 of withholding and no estimated payments. Although here petitioners paid the balance of the tax due with the return, they obviously were not in compliance with estimated payment

obligations throughout the pendency of their cases before Mr. Skidmore from early 2003 to mid-2004. The notice of determination for 2000 was issued on November 25, 2003, and that for 2001 and 2002 was issued on July 13, 2004. Estimated payments, intended to ensure that current taxes are paid, are a significant component of the Federal tax system, and Mr. Skidmore was entitled to rely on their absence in reaching his conclusions. In fact, petitioners' circumstances illustrate one of the reasons for requiring current compliance before granting collection alternatives such as an offer-in-compromise or an installment agreement; namely, the risk of pyramiding tax liability. See Orum v. Commissioner, 412 F.3d 819, 821 (7th Cir. 2005), affg. 123 T.C. 1 (2004).

As to alleged mitigating circumstances during the years in issue, the Court understands that petitioners had little control over medical exigencies or an industry slowdown. Petitioners claim that these circumstances establish that financial inability, rather than lack of desire, was responsible for their dilatory filings and payments. Again, however, current compliance is most germane. In addition, as Mr. Skidmore noted repeatedly, petitioners' assertions of financial hardship are difficult to square with the substantial cashflow through their accounts. Mr. Skidmore concluded that petitioners' broad assertions of business need and use did not satisfactorily

explain why some of the extensive funds could not be employed to pay taxes, and the Court concurs.

On the matter of collection alternatives, petitioners on brief specifically find fault with Mr. Skidmore's evaluation of currently not collectible status and of an offer-in-compromise. The Internal Revenue Manual (IRM) provides for the reporting of accounts as currently not collectible, pursuant to which accounts are removed from active inventory. IRM, sec. 5.16.1.1 (Sept. 2005). The IRM enumerates a variety of reasons that will support currently not collectible status, including where collection would create undue hardship by leaving taxpayers unable to meet necessary living expenses. Id.; see also Willis v. Commissioner, T.C. Memo. 2003-302.

Petitioners' claims of financial hardship rest in large part on the inclusion in their living expenses of housing costs greatly in excess of the amount considered standard for their geographic area; i.e., $7,081 claimed versus a $1,299 standard allowance. Petitioners attempted to explain and justify their housing expenditures in their October 27 and November 17, 2003, letters to Mr. Skidmore and in the attachment to their Form 12153 for 2001 and 2002 (which is substantially identical to the November 17 letter). They indicated that the figure represented payments made on three loans overencumbering their home and offered the following generalized statement in explanation: "The

loan money proceeds were used to help finance the development of the optical network optimization software at a time when the anticipated return was many times the amount of the loans." They also described their house as "extensively modified to include facilities to operate a successful consulting business", mentioning that rooms were used to store books, records, and equipment, as well as to meet with clients. By way of apparent analogy and without any support, they then "respectfully [suggested] that a $5,000 or $6,000 per month business expense for renting commercial office space would be allowed with very little scrutiny."

Mr. Skidmore, in his analysis of petitioners' financial circumstances for purposes of collection alternatives did not accept housing expenses in excess of the standard allowance. He also removed a claimed $2,959 life insurance expense from the computation. Petitioners' explanation of that expense, in their October 27, 2003, letter had likewise been limited to a generalized: "U.S. Bank required Mr. Cox to have a life insurance policy for the lines of credit which were approved based on the business income as well as the equity in the house. The whole-life policy also provides a potential 'line of credit' for the business." Petitioners allege on brief that Mr. Skidmore's failure to consider their business rationale for these expenses reveals an abuse of discretion.

The Court disagrees. Petitioners' broad-brushed intonations of business justification lack any sufficient corroboration in the record. While evidence may support the existence of and payments on mortgage loans and the life insurance policy, the documents proffered provide no link to business use. There has been no adequate effort by petitioners to trace the proceeds of the loans to any business-related outlays or to connect the insurance policy to any specific business-related agreement or transaction. Mr. Skidmore's unwillingness to credit petitioners' generalized, unsubstantiated assertions at face value hardly connotes an abuse of discretion.

Moreover, the inconsistencies between, and lack of evidentiary support for, a substantial number of the amounts shown in the financial materials submitted by petitioners largely vitiate the possibility of any convincing portrayal of hardship. It simply is unclear what funds were available and where they were going. For Mr. Skidmore to conclude that the record did not adequately establish currently not collectible status for petitioners' accounts was reasonable.

Like reasoning would also apply with respect to other forms of collection alternative. Petitioners state on brief that the Appeals officer refused to consider an offer-in-compromise because of difficulty in projecting future income. They fault him for not explaining why a 3- or 5-year average, allegedly

sanctioned in the IRM, could not be used.  On this point, suffice it to say that petitioners' representative during the administrative process expressed concurrence in the unavailability of an offer-in-compromise, and petitioners never submitted an actual offer, a concrete proposal for Mr. Skidmore to consider.  Discretion typically cannot be exercised, much less abused, in the abstract.  See, e.g., Kendricks v. Commissioner, 124 T.C. 69, 79 (2005); Neugebauer v. Commissioner, T.C. Memo. 2003-292.

Finally, petitioners frame challenges to the determinations in issue on the dictates of section 6330(c)(3)(C).  They summarize their allegations in this regard as set forth below:

> In both Notices of Determination, the Appeals Officer recognizes that the petitioners had "significant financial problems."  * * * Levies would only serve to harass the taxpayers, jeopardize full collection by scaring off customers/clients (who receive notices of levy) and make remaining in compliance impossible.  In his Notices of Determination, the Appeals Officer did not offer any explanation or analysis why the IRS needs the most intrusive collection possible, did not justify why liquidation of the business was necessary to ensure collection, or detail why the plaintiff's offer of collection alternatives was not appropriate (other than the compliance issue which was addressed in the petitioners' November 17, 2003 letter).  The Appeals Officer simply did not consider the impact that his determinations would have on these taxpayers, and did not perform the required balancing test.  By neglecting to consider the impact of its determination on the plaintiff, the Appeals Office was unable to legitimately examine whether the collection action was more intrusive than necessary.

The short answer to this challenge is that, as detailed above, petitioners did not during the administrative process establish the propriety of any alternative to counterbalance against the proposed levies. The notices of determination so communicate, observing that because petitioners did not present any acceptable alternatives, it did not appear that any less intrusive action would "meet the liability". They explicitly address the balancing analysis and appropriately highlight several of the facts undergirding Mr. Skidmore's conclusions. Furthermore, petitioners' contentions that Mr. Skidmore came to these conclusions "summarily" are contradicted by the record. The body of notes and correspondence compiled reveals instead that the focus of Mr. Skidmore's efforts throughout the entire process centered upon attempting to obtain and evaluate information concerning petitioners' financial circumstances in light of possible eligibility for collection alternatives. The notes also make reference specifically to intrusiveness and his thinking thereon. His eventual determinations that asking the Government merely to wait and see did not afford a reasonable and viable option were neither arbitrary, nor capricious, nor baseless.

In conclusion, the facts of these cases do not establish any abuse of discretion. The Court will sustain respondent's proposed collection actions as to taxable years 2000, 2001, and

2002, except to the extent modified by the referenced settlements between the parties.  To reflect the foregoing,

<u>Appropriate decisions</u>

<u>will be entered</u>.