T.C. Memo. 2020-113

UNITED STATES TAX COURT

CAROL JOY BIGGS-OWENS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15274-17L.                    Filed July 30, 2020.

<u>Joseph Falcone</u>, for petitioner.

<u>Alissa L. VanderKooi</u> and <u>Robert D. Heitmeyer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

URDA, <u>Judge</u>:  In this collection due process (CDP) case Carol Joy Biggs-Owens seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the

(continued...)

[*2] determination of the Internal Revenue Service (IRS) Office of Appeals[2] to

uphold the filing of a notice of Federal tax lien (NFTL) with respect to unpaid

Federal income tax liabilities for 2013 and 2014, as well as associated interest and

additions to tax. Ms. Biggs-Owens asserts that the Office of Appeals abused its

discretion in sustaining the NFTL filing. In particular, she contends that the

settlement officer closed the door to a collection alternative before giving her a

meaningful chance to bring herself into compliance with outstanding estimated tax

obligations. We find no abuse of discretion.

FINDINGS OF FACT

This case was tried in Detroit, Michigan. At trial the parties stipulated some

facts, which are so found. Ms. Biggs-Owens lived in Florida when she timely

filed her petition.

A.     Ms. Biggs-Owens' Tax Liabilities

During 2013 and 2014 Ms. Biggs-Owens owned two home healthcare

businesses. On her 2013 Federal income tax return she reported taxable income of

_____

[1](...continued)
nearest dollar.

[2]On July 1, 2019, the Office of Appeals was renamed the Independent
Office of Appeals. See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133
Stat. at 983 (2019). As the events in this case predated that change, we will use
the name in effect at the times relevant to this case, i.e., the Office of Appeals.

[*3] $191,715 and Federal income tax of $41,857. On her 2014 return she reported taxable income of $206,411 and tax of $56,186. Ms. Biggs-Owens' income tax withholdings for these years were $23,913 and $23,725, respectively, which did not fully cover her reported tax liability for either year.

The IRS thereafter assessed for each year the reported tax, an addition to tax for failure to timely pay under section 6651(a)(2), an addition to tax for failure to pay estimated tax under section 6654, and statutory interest. For 2013 Ms. Biggs-Owens also agreed to the assessment of $19,645 in additional tax and a section 6662 accuracy-related penalty.

In December 2014 Ms. Biggs-Owens entered into an installment agreement with the IRS. This agreement proved short-lived, with the IRS terminating it just six months later (in June 2015).[3] Ms. Biggs-Owens nonetheless made some intermittent payments of $4,300 thereafter, which were applied against her outstanding tax liabilities for various years. As relevant to this case, two payments of $4,300 were applied against her 2013 Federal income tax liability, and four payments of $4,300 were applied against her 2014 liability.

---

[3]Ms. Biggs-Owens apparently tried to resuscitate a modified version of this installment agreement in December 2015, offering to pay $1,000 a month towards her 2008, 2012, 2013, and 2014 unpaid tax liabilities, which totaled $190,478 at that time. The IRS rejected this proposal on the ground that she was able to pay $4,336 per month.

**[*4]** B.  <u>CDP Proceeding</u>

As part of its efforts to collect Ms. Biggs-Owens' unpaid 2013 and 2014 liabilities the IRS issued a notice informing her of the filing of an NFTL with respect to those years and apprising her of her right to request a CDP hearing pursuant to section 6320. Ms. Biggs-Owens filed a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which she checked the box for "Installment Agreement". She did not identify any other issues on the form. In March 2017 the IRS issued a letter to Ms. Biggs-Owens acknowledging receipt of her request and informing her that she was required to file her 2015 Federal income tax return before an installment agreement could be considered. She did not take any action in response to the letter.

Ms. Biggs-Owens' CDP case thereafter was assigned to a settlement officer in the Office of Appeals. On April 5, 2017, the settlement officer sent Ms. Biggs-Owens a Letter 4837 scheduling a telephone CDP hearing for May 11. Among other things, the settlement officer requested that Ms. Biggs-Owens submit within 14 days: (1) copies of her filed tax returns for 2015 and 2016, (2) proof of her estimated tax payments, (3) a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and/or Form 433-B, Collection Information Statement for Businesses, and (4) supporting financial

[*5] documentation for the last three months, emphasizing that she could not consider any collection alternatives without such information. Ms. Biggs-Owens did not provide any of the requested documents or otherwise communicate with the settlement officer before the scheduled hearing date.

Receiving no response, the settlement officer called Ms. Biggs-Owens as planned. Ms. Biggs-Owens answered and informed the settlement officer that she was unaware that the CDP hearing had been scheduled for that date. After the settlement officer explained the purpose of the hearing and volunteered to resend the Letter 4837, Ms. Biggs-Owens agreed to go forward with the hearing.

The parties then discussed multiple issues. In response to Ms. Biggs-Owens' claim that she was paying $4,300 per month pursuant to an installment agreement with the IRS, the settlement officer explained that no formal installment agreement was in effect. The settlement officer further observed that Ms. Biggs-Owens had failed to file her 2015 Federal income tax return, that her tax withholdings were insufficient to cover her liabilities, and that she appeared to owe estimated tax.

**[*6]**    The hearing ended with Ms. Biggs-Owens inquiring as to an offer-in-compromise (OIC).[4]  The settlement officer explained the OIC process, directed her to the IRS' website to download a Form 656-B, Offer in Compromise Booklet, and gave her 14 days to submit an OIC and supporting financial information.  The settlement officer then warned that if she did not receive the financial information within 14 days she would sustain the NFTL filing.

Thereafter, Ms. Biggs-Owens sent two batches of materials to the settlement officer.  On May 24, 2017, she provided a copy of her signed but unfiled 2015 tax return, a copy of her 2016 Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, and copies of her monthly bank statements for the periods ending from January 14, 2015, to December 13, 2016 (except for the period ending September 14, 2015).  In an accompanying cover letter Ms. Biggs-Owens requested more time to assemble the remaining financial

---

[4]An installment agreement and an OIC are two distinct types of collection alternatives to settle a taxpayer's tax debts with the IRS.  Generally speaking, an installment agreement is "[an] arrangement[] by which the Internal Revenue Service allows [a] taxpayer[] to pay liabilities over time."  Internal Revenue Manual (IRM) pt. 5.14.1.1(1) (Jan. 1, 2016); see also sec. 6159(a).  In contrast an OIC is "an agreement between a taxpayer and the government that settles a tax liability for payment of less than the full amount owed."  IRM pt. 5.8.1.2.1(1) (Sept. 23, 2008); see also sec. 7122(a).

[*7] documentation, noting that she was taking care of ailing relatives and that her accountant had been unable to help her.

The settlement officer gave Ms. Biggs-Owens another week (until June 1) to provide the rest of the required information, emphasizing that she needed to submit a Form 656, Offer in Compromise, and a Form 433-A. On May 31, 2017, Ms. Biggs-Owens submitted a Form 433-A and a Form 433-B. She also informed the settlement officer that she had retained the services of a new accountant, although the settlement officer was not able to reach him at that time.

Having heard nothing more from Ms. Biggs-Owens (or her accountant) by June 26, 2017, the settlement officer proceeded, inter alia, to analyze the Form 433-A. On that form Ms. Biggs-Owens reported monthly income of $23,426 and monthly living expenses of $23,209. The settlement officer accepted Ms. Biggs-Owens' monthly income[5] but concluded that her allowable monthly expenses were limited to $5,875, leaving $17,553 per month that could be paid towards her tax liabilities.

On June 28, the settlement officer informed Ms. Biggs-Owens and her accountant that she would sustain the NFTL filing. She explained that Ms. Biggs-

---

[5]The settlement officer apparently erroneously recorded the monthly income from the Form 433-A as "$23,428" rather than "$23,426" as reported by Ms. Biggs-Owens.

**[\*8]** Owens was not in compliance with her estimated tax obligations and that the taxes withheld on her wages were insufficient. She advised Ms. Biggs-Owens to wait for the 2015 return to post, file her 2016 return, and then request a collection alternative. The accountant responded that they planned to amend Ms. Biggs-Owens' 2015 return, which they believed would lower her balance. The settlement officer closed the case the next day.

On July 5, 2017, the Office of Appeals issued a notice of determination sustaining the filing of the NFTL for the years at issue and rejecting Ms. Biggs-Owens' request for a collection alternative. The notice explained that Ms. Biggs-Owens was ineligible for an installment agreement because she was not in compliance with her tax-paying obligations.

## OPINION

### I.  Standard of Review

We have jurisdiction to review the Office of Appeals' determination pursuant to sections 6320(c) and 6330(d)(1). See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Where, as here, the underlying tax liabilities are not at issue, we review the determination of the Office of Appeals for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). In reviewing for

[*9] abuse of discretion, we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

## II.     Abuse of Discretion

Ms. Biggs-Owens contends that the Office of Appeals abused its discretion in sustaining the NFTL filing. We consider whether the settlement officer: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues Ms. Biggs-Owens raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [Ms. Biggs-Owens] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). Our review of the record establishes that the settlement officer satisfied all of these requirements.

### A.     Verification

As an initial matter, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. See Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008), supplemented by 136 T.C. 463 (2011). Ms. Biggs-Owens has not challenged

[*10] verification, and we conclude, from our review of the record, that the settlement officer conducted a thorough review of the account transcripts and verified that all applicable requirements were met.[6]

B.    Issues Raised

The primary issue before us, as in the Office of Appeals, relates to collection alternatives.  Ms. Biggs-Owens requested an installment agreement in her Form 12153 and later raised the possibility of an OIC.  The notice of determination concluded that Ms. Biggs-Owens did not qualify for an installment agreement given her lack of compliance with her estimated tax obligations.  We see no abuse of discretion.

As an initial matter, although Ms. Biggs-Owens generally discussed an installment agreement with the settlement officer and subsequently provided some

---

[6]"Where the supervisory approval requirement of section 6751(b)(1) applies, the Appeals officer should obtain verification that such approval was obtained".  ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. 138, 144 (2019).  The approval requirement of sec. 6751(b)(1) does not apply to additions to tax under secs. 6651(a)(2) and 6654.  See sec. 6751(b)(2)(A).  Further, Ms. Biggs-Owens did not allege during her CDP hearing or before us that the sec. 6662 accuracy-related penalty assessed against her was not "personally approved (in writing) by the immediate supervisor of the individual making * * * [the penalty determination]."  Sec. 6751(b)(1).  She thus has conceded the issue. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); see also Sun River Fin. Tr. v. Commissioner, T.C. Memo. 2020-30, at *13 n.10.

**[\*11]** of the financial documentation that would be needed to evaluate an OIC, she did not propose any concrete terms with respect to an installment agreement or an OIC. We cannot fault the settlement officer for rejecting a collection alternative devoid of specific terms. See James A. Walker, P.A. v. Commissioner, T.C. Memo. 2014-187, at \*10 ("[I]t is not an abuse of discretion where the taxpayer does not propose any terms for an installment agreement or propose a specific collection alternative."); see also Busche v. Commissioner, T.C. Memo. 2011-285, 102 T.C.M. (CCH) 566, 573 (2011).

In addition, it is not an abuse of discretion when the settlement officer rejects a collection alternative for a taxpayer who fails to comply with current estimated tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); Cox v. Commissioner, 126 T.C. 237, 257-258 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008); Ransom v. Commissioner, T.C. Memo. 2018-211, at \*9-\*10, aff'd, 784 F. App'x 800 (D.C. Cir. 2019). As we have noted before, the requirement of current compliance with estimated tax liabilities as a prerequisite for a collection alternative ensures that current taxes are being paid and avoids the risk of pyramiding liabilities. See Ransom v. Commissioner, at \*9-\*10; see also Orum v. Commissioner, 412 F.3d 819 (7th Cir. 2005), aff'g 123 T.C. 1 (2004).

[*12] Ms. Biggs-Owens does not contend that she was in compliance with her estimated tax obligations at the time of her CDP proceeding. And the existence of outstanding reported liabilities for several years--apparently stemming from a pattern of insufficient withholding--raises the specter of pyramiding liabilities and supports requiring compliance with current estimated tax liabilities. Thus, even had Ms. Biggs-Owens proposed a collection alternative with concrete terms, her noncompliance would justify the settlement officer's decision to reject.[7]

Ms. Biggs-Owens contends, however, that the settlement officer abused her discretion by not giving her time to fix her estimated tax issues and propose actual terms of a collection alternative. We disagree. The settlement officer advised Ms. Biggs-Owens both in her initial letter and during the CDP hearing that compliance with her estimated tax obligations was required for a collection alternative. The settlement officer then gave Ms. Biggs-Owens two formal extensions of time (totaling three weeks) and an informal extension (more than a month) before the issuance of the notice of determination. Ms. Biggs-Owens could have brought herself into compliance at any point during this nearly two-month period. She did

_____

[7]At trial Ms. Biggs-Owens testified that her intermittent payments of $4,300 were meant to be estimated tax payments. Ms. Biggs-Owens adduced no evidence in support of this testimony and did not address this point in her brief. In any event her failure to raise this issue during the CDP hearing bars our consideration of it. See, e.g., Giamelli v. Commissioner, 129 T.C. 107, 112-113 (2007).

**[*13]** not do so.  The settlement officer was not obligated to hold the door open for

Ms. Biggs-Owens indefinitely.  See Northside Carting, Inc. v. Commissioner, T.C.

Memo. 2020-18, at *17; see also Gazi v. Commissioner, T.C. Memo. 2007-342, 94

T.C.M. (CCH) 474, 479 (2007) ("There is no requirement that the Commissioner

wait a certain amount of time before making a determination as to a proposed

levy."); sec. 301.6320-1(e)(3), Q&A-E9, Proced. & Admin. Regs.[8]

 C. Balancing Analysis

Ms. Biggs-Owens did not allege on petition or argue at any later point that

the settlement officer failed to consider "whether any proposed collection action

balances the need for the efficient collection of taxes with the legitimate concern

of the person that any collection action be no more intrusive than necessary."[9]  See

---

[8]Respondent argues that Ms. Biggs-Owens' failure to file her 2015 Federal income tax return justifies the settlement officer's refusal to consider her collection alternative.  A settlement officer may reject a proposed collection alternative on the ground that the taxpayer did not satisfy his tax filing obligations.  See Chadwick v. Commissioner, 154 T.C. __, __ (slip op. at 19) (Jan. 21, 2020).  The notice of determination did not clearly rely upon this point, however, and thus we cannot rely on this ground.  See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); see also Antioco v. Commissioner, T.C. Memo. 2013-35, at *25.

[9]During her CDP proceeding Ms. Biggs-Owens mentioned assorted problems including her husband's illness, her financial hardship, and her busy work schedule.  She failed to provide any evidence documenting these problems, and the settlement officer thus was not required to consider such unsupported allegations.  See Walker v. Commissioner, T.C. Memo. 2014-187, at *10.

[*14] sec. 6330(c)(3)(C). She thus has conceded this issue. See Rule 331(b)(4); see also Ansley v. Commissioner, T.C. Memo. 2019-46, at *19. In any event the settlement officer expressly concluded in the notice of determination that the filing of the NFTL balanced the need for efficient tax collection with Ms. Biggs-Owens' legitimate concerns about intrusiveness because she "did not present any relevant challenge to the appropriateness of the NFTL." We see no abuse of discretion.

III.   Conclusion

Finding no abuse of discretion in any respect, we will sustain the notice of determination upholding the filing of the NFTL for the years at issue.

To reflect the foregoing,

Decision will be entered for respondent.