OPINION
AMBRO, Circuit Judge.
William G. and Jacqueline R. Schwartz appeal a final judgment of the United States Tax Court. The Schwartzes claim that the Tax Court erred in holding that the Internal Revenue Service (“IRS”) did not abuse its discretion in rejecting the Schwartzes’ offer-in-compromise. We disagree with the Schwartzes and affirm the Tax Court’s decision.
I.
On November 10, 2003, the IRS issued real estate attorney William Schwartz and his wife, Jacqueline, a final notice of intent to levy for unpaid tax liabilities from the tax years 1996, 1997, 1998, 2000, and 2001. Their outstanding tax liabilities totaled $287,523.10. On November 17, 2008, the IRS followed with a notice of a federal tax lien. The Schwartzes responded to these notices by requesting collection due process (“CDP”) hearings under 26 U.S.C. §§ 6320 and 6330.[1] These CDP hearings *807 were conducted by mail and over the telephone with four different officers in the IRS Office of Appeals.[2]
During the CDP hearings, the Schwartzes did not challenge their overall tax liability. Instead, they entered into negotiations with the IRS over possible compromises. During these negotiations, the parties continually disagreed over the Schwartzes’ “collection potential” — particularly, the equity in the Schwartzes’ main asset, their home. The IRS Office of Chief Counsel rejected the Schwartzes’ first offer-in-compromise as legally insufficient because the appraisal offered by the Schwartzes was over two years old and, therefore, did not accurately reflect the value of the home when the offer-in-eom-promise was submitted. As a result, the Office of Chief Counsel requested additional information from the Schwartzes, including a new appraisal of their home. The Schwartzes responded with two new appraisals — one for $400,000 and another for $430,000. All told, the Schwartzes presented four separate offers-in-compromise to the IRS, ranging from $7,542 to $129,361.
By November 2005, the parties had preliminarily agreed to settle the Schwartzes’ tax liability for $129,361. Upon reaching this agreement, the Schwartzes’ Appeals officer transferred to another IRS office, and another officer was assigned to the Schwartzes’ ease. The new Appeals officer requested an opinion from the Office of Chief Counsel on the legal sufficiency of the new offer-in-compromise. On March 26, 2006, the Office of Chief Counsel concluded that it was unable to determine the legal sufficiency of the new offer because the “reasonable collection potential” of the Schwartzes’ home had not been adequately determined. The Office of Chief Counsel suggested that the Appeals officer request appraisal assistance from the IRS Engineering Group.
In April 2006, the Schwartzes’ Appeals officer was replaced again. Their case file was transferred to the new officer, who requested appraisal assistance from the Engineering Group. After reviewing the Schwartzes’ appraisals and examining related sales in the relevant housing market, the Engineering Group’s appraiser informed the Appeals officer of her preliminary analysis. She concluded that the current market value of the Schwartzes’ home might be 30-40% greater than indicated in the Schwartzes’ appraisals. Although the appraiser briefly mentioned her appraisal methods in her exchange with the Appeals officer, no formal report was ever filed by the Engineering Group on the Schwartzes’ case.
On June 6, 2006, the Office of Appeals notified the Schwartzes that the IRS had rejected their offer-in-compromise as inadequate. The Schwartzes appealed this decision to the United States Tax Court, arguing that the IRS abused its discretion in rejecting their offer-in-compromise. The Tax Court ruled in favor of the IRS, concluding that there was sufficient disagreement over the value of the Schwartzes’ home to justify the IRS’s decision to reject the offer-in-compromise. As a result, the Tax Court held that the IRS did not abuse its discretion.
On appeal, the Schwartzes argue both that the IRS valued their assets in an arbitrary and capricious manner and that, as a general matter, the IRS should be *808 required by our Court to conform with the Uniform Standards of Professional Appraisal Practice (USPAP). We disagree.
II.
We have jurisdiction to review decisions of the Tax Court under 26 U.S.C. § 7482(a)(1). “We review the Tax Court’s legal determinations de novo, but we do not disturb its factual findings unless they are clearly erroneous.” Lattera v. Comm’r, 437 F.3d 399, 401 (3d Cir.2006).
III.
During CDP hearings, taxpayers are allowed to propose collection alternatives, including offers-in-compromise. 26 U.S.C. § 6330(c)(2)(iii). The IRS officer may compromise a taxpayer’s liability where it has a “[djoubt as to collectability” of the outstanding tax liabilities. 26 C.F.R. § 301.7122-l(b)(2). Once a doubt as to collectability is established, the “decision to accept or reject an offer to compromise ... is left to the discretion of the [IRS].” 26 C.F.R. § 301.7122-l(c)(l). The IRS officer must ultimately determine whether the proposal “balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary.” 26 U.S.C. § 6330(c)(3)(C). Under IRS procedures, the officer will not accept a compromise that is less than the “reasonable collection value” of the case, absent a showing of special circumstances. Rev. Proe.2003-71. The offer-in-compromise should “refleet[ ] the amount the Service could collect through other means, including administrative and judicial collection remedies.” Id.
Both parties agree that we review the IRS’s rejection of an offer-in-compromise for “abuse of discretion.” Sego v. Comm’r, 114 T.C. 604, 610 (2000); see also Living Care Alternatives of Utica, Inc. v. United States, 411 F.3d 621, 625 (6th Cir.2005) (“[I]t was proper to review the IRS Appeals Office de novo with respect to decisions about the underlying tax liability and for abuse of discretion with respect to all other decisions.”). “Judicial review of such decisions is deferential.”[3] Orum v. Comm’r, 412 F.3d 819, 820 (7th Cir.2005). In considering the IRS’s determination, we are not to “conduct an independent review of what would be an acceptable offer in compromise.” Murphy v. Comm’r, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir.2006). Instead, we must “determine whether the Appeals officer’s decision to reject the offer in compromise actually submitted by the taxpayer was arbitrary, capricious, or without sound basis in fact or law.” Id.
Courts have consistently held that the IRS is owed considerable deference when considering the adequacy of a taxpayer’s proposed offer-in-compromise. See, e.g., Murphy, 469 F.3d at 32 (“We will only disturb the rejection of [the appellant’s] offer-in-compromise if it represents a clear abuse of discretion in the sense of taxpayer abuse and unfairness by the IRS.”) (internal quotation marks omitted); Orum, 412 F.3d at 821 (“[T]he Judicial Branch does not instruct the Executive Branch how to make executive decisions.”); Living Care, 411 F.3d at 627 (“In most cases, reviewing courts have merely affirmed the Appeals Officer’s determination.... ”). “[W]ithout a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS, as contemplated by Congress, the judiciaiy will inevitably become involved on a daily basis with tax *809 enforcement details that judges are neither qualified, nor have the time, to administer.” Living Care, 411 F.3d at 631.
IV.
There is no clear indication that the Schwartzes were treated unfairly in this case. Although unrelated circumstances forced them to communicate with four Appeals officers, the record suggests that each officer followed the relevant IRS procedures in handling the Schwartzes’ case. Furthermore, each Appeals officer was privy to their case file. The case file contained the key valuation information offered by the Schwai'tzes, including their three home appraisals and their responses to questions about possible defects in these appraisals. Importantly, the file also contained the case notes from the previous Appeals officers working on the Schwartzes’ case.
In addition, the member of the Engineering Group who analyzed the Schwartzes’ final offer-in-compromise held an MAI designation.[4] Although the Schwartzes are correct in noting that the Engineering Group only offered their conclusions informally, a formal appraisal report was not required by IRS regulations and procedures.[5] The Engineering Group’s informal report briefly outlined the appraiser’s methods, which included a review of the Schwartzes’ appraisals and an independent examination of related sales in the relevant housing market. Although the appraiser only offered a preliminary opinion, she concluded that the Schwartzes’ appraisals had understated the value of their home. As noted, the Engineering Group appraiser added that the value of the Schwartzes’ home may be 30-40% higher than the appraised value. In the end, it was not an abuse of discretion for the IRS to rely on one expert’s analysis over another, especially after the IRS had already noted several defects in the previous appraisals offered by the Schwartzes, beginning with their first appraisal submitted in March 2003.
Finally, contrary to the Schwartzes’ argument, the IRS was not required to use the USPAP in reviewing the Schwartzes’ appraisals. See, e.g., Whitehouse Hotel Ltd. P’ship v. Comm’r, No. 12104-03, 2008 WL 4757336, at *10 (U.S.Tax Ct. Oct.30, 2008) (“Petitioners have not cited any authority, nor do we know of any, for the proposition that an appraiser’s compliance with USPAP is the sole determining factor as to whether an appraiser’s valuation report is reliable.”).[6] It was within the discretion of the IRS to consider the appropriate method for evaluating the Schwartzes’ home appraisals. See Rev. Proc.2003-71; Int. Rev. Man. 5.8.5.4.11.
V.
Over a six-year period, the Schwartzes incurred over $287,000 in tax liabilities. In handling the Schwartzes’ case, the IRS followed its established procedures. Before determining that the Schwartzes’ of *810 fer-in-compromise was inadequate, the Office of Appeals reviewed the taxpayers’ submissions (including three home appraisals), researched comparable sales, and solicited the advice of the IRS Engineering Group. In the end, the IRS “gave notice, allowed a hearing, and made a reasoned decision, which is supported by substantial evidence.” Orum, 412 F.3d at 821. In so doing, we hold that the IRS did not abuse its discretion in rejecting the Schwartzes’ offer-in-compromise.
We therefore affirm the judgment of the United States Tax Court.

. Section 6330 governs the process for IRS levy actions against the property of delinquent taxpayers, and § 6320 applies to federal tax lien filings. For an extended discussion of *807 the statutory framework for this process, see Murphy v. Comm'r, 469 F.3d 27, 30 (1st Cir.2006); Living Care Alternatives of Utica, Inc. v. United States, 411 F.3d 621, 624-25 (6th Cir.2005).

. The turnover in Appeals officers was due to unrelated circumstances, including the retirement of one officer and the office transfer of another.

. The Sixth Circuit Court recently cautioned against reading other notions of due process into IRS proceedings. Living Care, 411 F.3d at 629 ("[T]he notion of due process in tax collection is not the same as in other areas of law. The IRS has historically had broad discretion. ...”).

. "Within the real estate appraisal community MAI is viewed as the highest regarded appraisal designation." Schwartz v. Comm'r, No. 12530-06L, 2008 WL 1862652, at *3 n. 8 (U.S.Tax Ct. Apr.28, 2008).

. For an overview of the real estate valuation criteria in this context, see Int. Rev. Man. 5.8.5.4.11. Although the record indicates that the communications between the Engineering Group's appraiser and the Appeals officer were informal, the appraiser based her preliminary conclusions on other sales in the relevant housing market and her analysis of the Schwartzes' appraisals. These methods are consistent with the approved methods outlined in the Internal Revenue Manual. Id.

.In Whitehouse Hotel, the Tax Court explicitly "declinefd] to adopt USPAP as the sole standard for reliability of an expert appraiser." 2008 WL 4757336, at *10.