RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LIVING CARE ALTERNATIVES OF UTICA, INC.,
                              *Plaintiff-Appellant,*

        *v.*                                          Nos. 04-3194/3554

UNITED STATES OF AMERICA, INTERNAL REVENUE
SERVICE,

                              *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 03-00359; 02-00717—Gregory L. Frost,
Edmund A. Sargus, Jr., District Judges.

Argued: April 28, 2005

Decided and Filed: June 2, 2005

Before: KEITH, MERRITT, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Carla I. Struble, Westerville, Ohio, for Appellant. Robert J. Branman, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION, TAX DIVISION, Washington, D.C., for Appellee. **ON BRIEF:** Carla I. Struble, Westerville, Ohio, for Appellant. Rachel I. Wollitzer, Jonathan S. Cohen, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION, TAX DIVISION, Washington, D.C., for Appellee.

---

## OPINION

---

        MERRITT, Circuit Judge. This opinion addresses separate appeals from two district court cases involving the same parties and almost identical issues. Plaintiff, Living Care Alternatives of Utica, Inc. ("Living Care"), appeals district court decisions affirming the Internal Revenue Service's Appeals Office decisions to allow tax liens and levies on Living Care's property for unpaid employment taxes for various periods between 1995 and 2001. These appeals require an interpretation of the new Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685. For the reasons set forth below, we affirm.

1

## SUMMARY OF FACTS

Living Care owns and operates a nursing home facility in Licking County, Ohio, which has approximately thirty-five beds and forty employees and receives ninety percent of its revenue from Medicare and Medicaid billing.  This revenue totals approximately $100,000 per month.  Since the mid-1990's, Living Care has struggled to comply with its tax obligations.  The taxes at issue in the instant cases are payroll taxes withheld from employees' paychecks and held in trust by the employer until payments are made to the government.  From 1995 to 2001, Living Care has intermittently failed to forward the required taxes to the IRS.  (Living Care I, Case No. 04-3194 involves annual payments for tax year 1999 and quarterly payments in 1999 and 2001; Living Care II, Case No. 04-3554 involves annual payments for tax years 1995, 1998 and 2000 and quarterly taxes for various quarters in 1995, 1996, 1999, 2000 and 2001).[1]  Under a previous levy around 1996 or 1997, Living Care entered into an installment agreement with the IRS, but defaulted in 1999.  The total current liability (including interest and penalties) is approximately $450,000, although Living Care points out it has paid its newly accrued taxes since July 2002.

In May 2001 and May 2002, the government sent Notices of Federal Tax Liens and Notices of Intent to Levy to Living Care, along with a notice of the taxpayer's right to request a hearing before the IRS Appeals Office, which the taxpayer timely invoked.  Collection due process hearings were conducted by phone in March 2002 (Living Care II, Case No. 04-3554) and December 2002 (Living Care I, Case No. 04-3194).  Notice of Determination letters denying Living Care's claims were mailed June 2002 and March 2003, respectively.  Living Care appealed these decisions separately to the District Court for the Southern District of Ohio.  In both cases, which were heard by different judges, the courts affirmed the IRS.[2]  *See Living Care Alternatives of Utica, Inc. v. United States* (*Living Care I*), No. 02:03-CV-0359, 2003 WL 23311523 (S.D. Ohio Dec. 12, 2003); *Living Care Alternatives of Utica, Inc. v. United States (Living Care II),* 312 F. Supp. 2d 929 (S.D. Ohio 2004).  Living Care now appeals these decisions.

## ANALYSIS

### I. Judicial Review of Collection Due Process Proceedings

Collection due process hearings were created by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685 ("the Restructuring and Reform Act").[3]

---

[1] Although the administrative hearing for *Living Care II* was held first, the District Court decided the case second.  It will therefore be referred to as *Living Care II.*

[2] Other tax periods were the subject of other collection due process hearings and at least three other district court appeals.  According to Living Care's Briefs, these cases are awaiting various decisions in the district courts.  *See* Living Care Proof Br. (Case No. 04-3554) at 21 n.7.

[3]

> The Commissioner of Internal Revenue shall develop and implement a plan to reorganize the Internal Revenue Service.  The plan shall . . . eliminate or substantially modify the existing organization of the Internal Revenue Service which is based on a national, regional, and district structure; . . . establish organizational units serving particular groups of taxpayers with similar needs; and . . . ensure an independent appeals function within the Internal Revenue Service, including the prohibition of ex parte communications between appeals officers and other Internal Revenue Service employees to the extent that such communications appear to compromise the independence of the appeals officers.

The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 1001, 112 Stat. 685, 689 (1998).

The method or standards for judicial review of these hearings is not yet settled, hence the problems in these cases. Prior to this Act, the IRS had the right to levy on taxpayer property without any prior opportunity for a hearing or procedural due process, so long as post-deprivation procedures were provided.  The Supreme Court sustained this approach almost seventy-five years ago.  *See Phillips v. Commissioner*, 283 U.S. 589, 595 (1931).  While passage of the Restructuring and Reform Act does indicate Congress's intent to provide taxpayers with additional protection in the form of procedures prior to IRS action, it must be interpreted in this historical context.  Tax liens and levies are not typical collection actions; the IRS has much greater latitude and leeway than a normal creditor.  *See generally* Leslie Book, *The Collection Due Process Rights: A Misstep or a Step in the Right Direction?* 41 Hous. L. Rev. 1145 (2004) (discussing the history of due process in tax collection proceedings).

The Tax Code grants taxpayers the right to a hearing both on notice of lien and on notice of levy.  *See* 26 U.S.C. § 6320(b); 26 U.S.C. § 6330(b).  Proceedings are informal and may be conducted via correspondence, over the phone or face to face.  *See* Treas. Reg. § 601.106(c) & § 301.6330-1, Q&A-D6.  No transcript, recording, or other direct documentation of the proceeding is required.  *See id.* § 301.6330-1, Q&A-D6.  Taxpayers do have a right to an impartial hearing officer "who has had no prior involvement with respect to the unpaid tax . . . before the first hearing."  26 U.S.C. § 6320(b)(3).  A taxpayer may challenge his underlying tax liability at the collection due process hearing, only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  26 U.S.C. § 6330(c)(2)(B).  Any other relevant issue relating to the unpaid tax may be raised during the hearing, including spousal defenses, challenges to the appropriateness of collection actions, and alternative collection options (such as posting of a bond, installment agreements, or offers in compromise).  26 U.S.C. § 6330(c)(2)(A).  By statute, the IRS Appeals Officer must: 1) conduct a verification that the IRS has met all legal requirements and fulfilled its procedural obligations to move forward with the lien or levy, 2) consider defenses and collection alternatives proffered by the taxpayer and, 3) make a determination that the "proposed collection action *balances* the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  26 U.S.C. § 6330(c)(3) (emphasis added).  This final balancing factor is novel in American tax law and injects into the calculus an equitable consideration for the taxpayer and his concerns.  Not surprisingly, the taxpayer in the instant cases relies quite heavily on this factor in its arguments for relief.

On completion of his review, the Appeals Officer sends his final decision to the taxpayer in a Notice of Determination letter.  The statutes then allow for judicial review of this determination by whatever federal court has jurisdiction over the underlying tax (either the Tax Court or the District Courts).

We review a district court's grant of summary judgment *de novo*.[4]  Both the parties and the district court judges in these cases agreed that it was proper to review the IRS Appeals Office *de novo* with respect to decisions about the underlying tax liability and for abuse of discretion with respect to all other decisions, *see Bartley v. United States,* 343 F. Supp. 2d. 649, 652 (N.D. Ohio 2004), but the parties disagreed about whether the underlying liability was actually challenged in these cases.  *See* Part II.A., *infra*.  Finally, the district court may only review issues that were

---

[4]The District Court in *Living Care II*, 312 F. Supp. 2d at 933, determined that motions for summary judgment make no sense in the context of judicial review of agency decisions.  Therefore, the court treated the motions for summary judgment as cross-motions for judgment on the pleadings.  Many courts, including this one, have allowed motions for summary judgment when reviewing collection due process hearings.  *See e.g., Herip v. United States*, No. 02-4078, 2004 WL 1987302 (6th Cir. Sept. 2, 2004) (unpublished).

originally raised in the collection due process hearing.  *See* Treas. Reg. § 301.6330-1(f)(2), Q-F5 & A-F5.

Judicial review of collection due process hearings presents a real problem for reviewing courts.  Congress overlaid the Restructuring and Reform Act on a previous system that involved very little judicial oversight.  The result is a surprisingly scant record, comprised almost exclusively of the parties' appellate briefs and the Notice of Determination letter.  No transcript or official record of the hearing is required and, accordingly, one rarely exists.  Since normal review of administrative decisions requires the existence of a record, *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), *overruled on unrelated grounds by Califino v. Sanders*, 430 U.S. 99, 105 (1977), Congress must have been contemplating a more deferential review of these tax appeals than of more formal agency decisions.  This might explain why, of six collection due process cases reviewed by the Sixth Circuit, five have been disposed of under our Court's Rule 34 and all six have been unpublished.  None has overturned the IRS decision or required a remand.  *See Herip v. United States*, No. 02-4078, 2004 WL 1987302 (6th Cir. Sept. 2, 2004) (unpublished); *Minion v. Commissioner*, No. 03-1337, 2003 WL 22434751 (6th Cir. Oct. 24, 2003) (unpublished); *Wasson v. Commissioner*, No. 02-2134, 2003 WL 1516288 (6th Cir. Mar. 21, 2003) (unpublished); *Hauck v. Commissioner*, No. 02-2301, 2003 WL 21005238 (6th Cir. May 2, 2003) (unpublished); *Brown v. Commissioner*, No. 02-1630, 2002 WL 31863695 (6th Cir. Dec. 19, 2002) (unpublished); *Diefenbaugh v. Weiss*, No. 00-3344, 2000 WL 1679510 (6th Cir. Nov. 3, 2000) (unpublished).

## II. Living Care's Claims

Living Care raises four identical claims in each case.  They will therefore be analyzed together.

### A. District Court Applied an Incorrect Standard of Review

Living Care agrees with the government that, in order to receive a *de novo* review of the Appeals Officers' decisions, it had to have challenged the validity of the underlying tax liability at the collection due process hearings.  Otherwise, the Appeals Officers' decisions are reviewed for abuse of discretion.[5]

Living Care's evidence that it challenged the validity of the underlying liability is exceptionally weak.  One of the Notice of Determination letters does not mention this issue at all and the other states "The underlying tax was not challenged."  Living Care therefore argues that the Appeals Officers misconstrued and misunderstood its attempts to challenge the tax.

In large part, its argument is based on the premise that "nursing homes are different."  Living Care's facility receives almost all of its income from government programs (Medicare and Medicaid) that require strict compliance with comprehensive regulatory regimes.  These regimes limit the possibility for profit, control and limit admission of new patients, and mandate high

---

[5]Since the statute itself is silent as to the appropriate standard, the legislative history of the Restructuring and Reform Act is often cited for establishing this two-tiered approach.

> Where the validity of the tax liability was properly at issue in the hearing, and where the determination with regard to the tax liability is part of the appeal, no levy may take place during the pendency of the appeal.  The amount of the tax liability will in such cases be reviewed by the appropriate court on a de novo basis.  Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion.

*Goza v. Commissioner*, 114 T.C. 176, 181 (2000) (quoting with approval H.R. Conf. Rept. No. 105-599, at 266 (1998)).

standards in the areas of staffing, food, and medical care.  Living Care argues that the regulatory regime became particularly oppressive starting in the mid 1990's.

> These government mandated changes resulted in Living Care not being able to pay all its withholding obligations.  The government required that Living Care meet the increased mandated care requirements and staffing requirements.  Living Care did this and when the decision had to be made between paying for resident care and taxes, Living Care paid for the food, utilities, medications, staffing etc [sic] and delayed the payment of taxes - taxes were not simply refused or neglected.

Living Care Proof Br. (Case No. 04-3554) at 18.  Living Care maintains that it relied on the above argument during the collection due process hearings and that this argument was equivalent to challenging the underlying liability itself.[6]  Furthermore, it argues that the identical requests in its Complaints to the District Courts that the "tax liability be removed" also constituted a challenge to the validity of the liability.

The plain meaning of "challenging validity of the underlying tax liability" requires more than the taxpayer's actions in these cases.  Passionately arguing that it is bad public policy to tax a nursing home that was trying in good faith to comply with a comprehensive regulatory scheme is not the same as challenging the validity of the tax.  Similarly, requesting that a district court "remove" a tax liability does not constitute a claim at the IRS hearing and is not an assertion that the liability was not valid in the first place; to the contrary, it seems to be admitting it was valid and then requesting that payment be excused.  Therefore, all aspects of the Appeals Officers' decisions are reviewed for abuse of discretion.

*B. Abuse of Discretion in the Balancing Analysis*

The Tax Code requires that an IRS Appeals Officer, in making a final determination after a collection due process hearing, decide "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary."  26 U.S.C. § 6330(c)(3)(C).[7]  There is little discussion or guidance about this requirement in legal scholarship or case law.  *But see*, Book, *The Collection Due Process Rights, supra*, at 1185-93.  In most cases, reviewing courts have merely affirmed the Appeals Officer's determination that he conducted the balancing test and that he found the results

---

[6]In another section of its Brief, Living Care presents the argument this way:

> Here Living Care submits that the District Court erred in concluding that Living Care did not challenge the underlying tax liability.  Living Care may not have talked "tax code" language, but it did talk the normal language of the nursing home business.  Living Care explained the Catch 22 of government funding and mndates, [sic] where the government gives on the one hand and takes with the other.  Government requirements ruled all aspects of operation and mandated that Living Care do and provide certain things, while at the same time kept out new residents and decreased occupancy, penalized the nursing home for low occupancy and decreased funding.  Yet the government required the payment of taxes timely and then the payment of interest and penalties (but which Medicaid will not allowed to be reimbursed [sic]).  This challenge was made by Living Care in language that has meaning to a nursing home operator.  It may not be how an accountant, attorney or IRS agent would phrase such a challenge.  But the taxpayer did challenge it in the Request for Hearing and at the hearing.

Living Care Proof Br. (Case No. 04-3554) at 32.

[7]The other two issues that must be addressed are verification that applicable law and procedures were followed and other relevant issues raised at the hearing (such as defenses and collection alternatives).  *See* 26 U.S.C. § 6330(c).

to be consistent with the decision to proceed with levying the property.  *See e.g.*, *Jackling v. IRS*, 352 F. Supp. 2d 129 (D.N.H. 2004); *Elkins v. United States*, No. 4:03-CV-97-1 (CDL), 2004 WL 3187094 (M.D. Ga. Sept. 29, 2004).  One notable exception to this pattern is found in *Mesa Oil, Inc. v. United States*,  No. Civ.A. 00-B-851, 2000 WL 1745280 (D. Colo. Nov. 21, 2000) (unpublished), where an oil company fell behind in its payroll tax deposits over a six quarter period, totaling about $425,000.  There the district court, reviewing an IRS Appeals Officer's collection due process hearing and Notice of Determination, remanded the case to the IRS for development of a more complete record and clarification of the reasoning behind the determination that the balancing test was met.  The court was especially concerned that the Notice of Determination included "no statement of facts, no legal analysis, and no explanation of how or why the proposed levy balanced the need for collection with [the taxpayer's] interests" but merely a "blank recitation of the statute." *Id*. at \*4; *accord Cox v. United States*, 345 F. Supp. 2d 1218 (W.D. Okla. 2004) (citing positively *Mesa Oil's* remand for further development of the record and ruling that balancing did not occur because the IRS erroneously believed taxpayer was ineligible for installment agreement).  *Mesa Oil's* remand is an exception to the general practice of reviewing courts showing deference to Appeals Officers' conclusions regarding the balancing analysis.

       In the instant appeals, Living Care presents three related arguments to support its claim that the balancing test was not met, or more accurately, that the Appeals Officers abused their discretion in conducting the balancing test.  First, Living Care claims the Appeals Officers failed to include the existence of senior lienholders in their balancing analyses, in spite of the discussion of this fact during the hearings.[8]   Second, the Officers failed to consider that, because of these senior lienholders, the net effect of an IRS levy would be to shut down the business without generating any tax revenue for the government.  Since the IRS liens would be junior to existing creditors and the existing debt exceeded the value of the property, the IRS would collect nothing.  Finally, in its Reply Brief in the Living Care II case (Case No. 04-3554), Living Care correctly alleges, albeit for the first time, that the IRS has a statutory duty to investigate, prior to executing a levy, the existence of liens on the property and determine "that the equity in such property is sufficient to yield net proceeds from the sale of such property to apply to [taxpayer's] liability."  26 U.S.C. § 6331(j)(2)(C).

       The government first responds that the Appeals Officers were aware of the other lienholders, as evidenced by the statement in the Notice of Determination from Living Care I that "[i]f the business sells, proceeds will be distributed according to priority of claims.  (Lien priority)."  In Living Care II, the government argues that Living Care's Request for Hearing makes no mention of these senior liens and that there is no evidence they were mentioned during the hearing.  The lack of evidence from the hearing is potentially misleading since there is no formal record of the hearing and the government itself prepared the only account of what was discussed.  The government's stronger argument, made in the alternative, is that even if the senior liens were raised and ignored, there is no requirement that the government consider in its balancing analysis whether it will receive any revenue from a levy and sale, or whether the business will have to close down due to the levy and sale.  It cites several cases for these propositions.  *See Medlock v. United States*,  325 F. Supp. 2d 1064 (C.D. Cal. 2003); *Cardinal Healthcare, Inc. v. United States*, No. 01-4300-JLF, 2002 WL 31002880 (S.D. Ill. July 25, 2002); *Kitchen Cabinets, Inc. v. United States*, No. Civ.A.3:00CV0599M, 2001 WL 237384 (N.D. Tex. Mar. 6, 2001).  The case law supports the proposition that the government is not required to continue subsidizing failing businesses by foregoing tax collection.  Any other conclusion would create a bizarre tax system with perverse

_____

       [8]Living Care also attempts to argue that the Appeals Officers disregarded *all* additional information provided during the hearing, instead relying only on the information in its Request for Hearing.  This argument is undermined, at least in Living Care II, by statements in the Notice of Determination such as "During our conference you agreed that. . ." J.A. Living Care II (Case No. 04-3554) at 17, and ". . . you admitted during our conference that . . ." *Id.* at 18.

incentives for businesses to maintain themselves on the edge of insolvency in order to enjoy immunity from tax enforcement.

The government's response to Living Care's statutory argument (which the government first offered at oral argument since Living Care first raised the statute in its Reply Brief) is that the statutory duty has not yet arisen. All that the statute requires is that the IRS investigate the equity in a property prior to levying on it, not prior to the collection due process hearing. The only court that has apparently addressed this issue did so in the context of the collection due process verification requirement and agreed that the statutory investigation was not required prior to a collection due process hearing. In *Medlock*, 325 F. Supp. 2d at 1079, the district court said:

> Appeals Officer Rich was not required, during the [Collection Due Process] Appeal process, to determine whether the equity in Medlock's property was sufficient to yield net proceeds . . . or investigate the status of Medlock's property . . . . According to the plain language of the relevant statutory sections, [6331(f) and 6331(j)] these actions must be taken before a taxpayer's property may be levied upon by the IRS but are prematurely raised at this stage of the collection process. Appeals Officer Rich's alleged failure to perform those actions therefore does not constitute a violation of [the collection due process statutes].

We agree with this reasoning and find no statutory violation arising from the IRS's failure to investigate at this time the available equity in the taxpayer's property. This failure cannot, therefore, provide the basis for overturning the Appeals Officers' balancing analyses or final decisions.

## C. Insufficient Record for Review

Living Care includes this issue in its request for a *de novo* review by this court, "with a hearing that more closely resembles an evidentiary hearing and gives the taxpayer the opportunity to have what he presents actually recorded for future review." Living Care Proof Br. (Case No. 04-3554) at 37. Since it would be inappropriate for this Court to hold an evidentiary hearing under these circumstances, we consider this claim as a request to remand the cases either to the district courts or to the IRS for development of a more thorough record. Not surprisingly, Living Care cites *Mesa Oil* in support of its request. Only the court in *Mesa Oil* has gone so far as to remand to the IRS in a collection due process case with an order that the new hearing have a record "made either through audio tape recording, video tape recording, or stenographer." *Mesa Oil,* 2000 WL 1745280 at *7. The court there expressed concern that the Notice of Determination's lack of analysis amounted to no record whatsoever and therefore did not allow for a meaningful review. While this is a conventional remedy in administrative law cases, it was extraordinary in the area of tax collection. As discussed earlier, the notion of due process in tax collection is not the same as in other areas of the law. The IRS has historically had broad discretion and the right to levy on property without any pre-seizure process. The 1998 reform did provide for additional procedural protections, but it still does not require the creation of a formal record and conventional administrative review. Admittedly, this makes application of the abuse of discretion standard quite difficult, but at the very least, in order to overturn the IRS decisions, we must be convinced that the type of taxpayer abuse that Congress sought to remedy has occurred in the case. Neither of these cases presents such egregious facts.

In both cases below, the District Courts distinguished the Notices of Determination they were reviewing from the one in *Mesa Oil*.

> Unlike the court in *Mesa Oil*, this court has before it a report from the collection due process hearing which sets forth the issues raised by Living Care, as well as a

discussion of those issues.  The [Appeals Officer's] report explains the collection alternatives raised by Plaintiff and why those collection alternatives were impracticable and unreasonable.  In the instant case the [Officer] enumerated specific reasons why the IRS's levy action and lien filing balanced the [needs of both parties.]

*Living Care I,* 2003 WL 23311523 at *3.  And similarly, in Living Care II, "the [Appeals Officer's] Determination in this case is clearly more through [sic] and appropriate in its factual review and analysis than was the one which apparently confronted the court in Mesa Oil." *Living Care II*, 312 F. Supp. 2d at 935.

The Notices of Determination in these cases satisfy due process and provide a sufficient basis for an abuse of discretion review, as that standard is applied in tax levy and lien appeals.

### D. Abuse of Discretion Not to Allow Offer in Compromise

While Living Care raises this claim in both cases, only the Notice of Determination in Living Care I contains problematic language, meaning the Living Care II claim is without merit.

One of the three areas that Appeals Officers must consider in making their final Determination is offers of collection alternatives made by the taxpayer.  At both hearings, Living Care presented plans to either sell the business as a going concern and use the proceeds to pay its tax liabilities or to present an offer in compromise.  Living Care rejected the possibility of an installment agreement, since such an agreement would have to be funded from company profits and Medicare and Medicaid billing generally do not allow for profit.  Also, under a previous levy around 1996 or 1997, Living Care had entered into an installment agreement with the IRS, and then defaulted in 1999.

The Living Care II Notice of Determination (dated June 21, 2002), *see* J.A. (Case No. 04-3554) at 12, rejected these plans because the business had currently been on the market for over a year without generating a sale or contract and Living Care was not, at that time, current on its tax payments.  The taxpayer must be current on payments for the previous two quarters to be eligible to submit an offer in compromise.  These facts, coupled with Living Care's prior default in 1999 on its installment agreement, fully support the decision to reject the alternatives offered.

The Living Care I Notice of Determination (dated March 25, 2003), *see* J.A. (Case No. 04-3194) at 51, however, contains contradictory statements.  On page 2, the Notice states, "Tax deposits are being made and the taxpayer appears to be current for both the 3rd and 4th quarters of 2002." *Id.* at 54.  On page 6, in a section discussing the option of an offer in compromise, it states,

The two quarters preceding the current quarter are the 2nd and 3rd.  The taxpayer owes tax for the 2nd; consequently, the taxpayer will not be eligible until the 1st quarter of 2003. . . . Therefore, *as of the date of this report*, the taxpayer is not eligible for an offer in compromise.

*Id.* at 58 (emphasis added).  The hearing date in Living Care I was December 12, 2002.  The date on the Notice of Determination was March 25, 2003.  Either the Appeals Officer intended to express his eligibility determination in terms of the date *of the hearing* and simply made a typographical error, or he erroneously determined that Living Care was not eligible as of the date *of the report*, even though his statements on page 2 express recognition that Living Care had made the last two quarter's payments on time.

The government offers several valid responses.  First, and most simply, that it was a mere typographical error that does not reach the level of abuse of discretion.  This interpretation would

have the Court focus on the date of the hearing, since both sides agree that at that time Living Care was not eligible to submit an offer in compromise. In the alternative, the government argues even if the Appeals Officer did misapply the law, Living Care still had an obligation to actually file an offer in compromise, which it failed to do. Therefore, even if it was eligible, its failure to file the proper financial paperwork and IRS forms led to the same result - a rejection of its collection alternatives. Finally, the government presents a litany of additional bases on which the Appeals Officer could have validly rejected Living Care's alternative collection option. These include Living Care's failure to meet the two quarters requirement as of the time of the hearing, its default under the previous installment payment plan in the late 1990's, the escalating amount of unpaid tax liability due to accruing interest and penalties, and the government's need to collect the taxes quickly because of Living Care's financial difficulties.

There is no need to rely on any one of these explanations alone. It is clear that the IRS was well within its discretion to reject Living Care's plan to present an offer in compromise. If the Appeals Officer mistakenly felt his hands were tied because of the two quarters requirement, there are administrative remedies available to point out such mistakes and allow the IRS an opportunity to re-examine its earlier decision. Treas. Reg. § 301-6330-1(h)(1) ("The Appeals office that makes a determination under section 6330 retains jurisdiction over that determination, including any subsequent administrative hearings that may be requested by the taxpayer regarding levies and any collection action taken or proposed with respect to Appeals' determination."). But for this Court, reviewing the Appeals Officers' decisions for abuse of discretion, Living Care has failed to present sufficient evidence to justify a remand. Otherwise, without a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS, as contemplated by Congress, the judiciary will inevitably become involved on a daily basis with tax enforcement details that judges are neither qualified, nor have the time, to administer.

For the reasons discussed above, we affirm the decision of the District Courts in these cases.