**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 11a0807n.06**

**No. 10-1431**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ALAN CHRISTOPHER REYES, | ) | |
| | ) | **FILED** |
| Petitioner - Appellant, | ) | **Dec 02, 2011** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES TAX COURT |
| COMMISSIONER OF INTERNAL | ) | |
| REVENUE, | ) | OPINION |
| | ) | |
| Respondent - Appellee. | ) | |

**Before: GIBBONS, STRANCH, and ROTH,** * **Circuit Judges.**

**JANE B. STRANCH**, Circuit Judge. Alan Christopher Reyes appeals *pro se* from the Order

and Decision of the United States Tax Court granting summary judgment in favor of the

Commissioner of Internal Revenue and authorizing the Commissioner to proceed by levy to collect

Reyes's unpaid federal income taxes, interest, and penalties for the tax years 1999 through 2004, as

determined by a Notice of Determination dated January 23, 2009. Reyes contends that he was not

under any lawful obligation to file an individual federal income tax return for the tax years in

question, that the Commissioner denied him a Collections Due Process (CDP) hearing, and that we

should overturn the Tax Court's decision as factually and legally erroneous. Because Reyes's

---

*The Honorable Jane R. Roth, Circuit Judge for the United States Court of Appeals for the
Third Circuit.

1

arguments do not demonstrate the existence of a genuine issue of material fact, or that the IRS is not entitled to judgment as a matter of law, we **AFFIRM** the decision of the Tax Court.

## I.  FACTS AND PROCEDURAL HISTORY

In September 2007, Reyes, who was represented by counsel, filed Tax Court Petition No. 20316-07 challenging assessments of federal income tax deficiencies, penalties, additions to tax, and interest for tax years 2000, 2001, 2003, and 2004.  In January 2008, the Tax Court entered a decision based on the parties' stipulation that Reyes owed the specified income tax deficiencies, penalties and interest for those tax years.

When Reyes failed to pay the amounts due, in September 2008 the Commissioner sent Reyes a Notice of Intent to Levy for tax years 1999 through 2004 in the total amount of $230,634.12.  The notice advised Reyes of his right to request a CDP hearing.  The Commissioner conceded before the Tax Court that Reyes did not actually receive previous IRS notices of deficiency for tax years 1999 and 2002.

In October 2008, Reyes, through counsel, submitted a request to the IRS Office of Appeals for a CDP hearing on the Notice of Intent to Levy for tax years 1999 through 2004.  In the space for "Collection Alternative," Reyes checked boxes asking for an "Installment Agreement" or an "Offer in Compromise."  IRS Appeals Settlement Officer Jesse Voysest responded by letter to Reyes in December 2008, acknowledging his request and setting a telephonic CDP hearing on January 7, 2009.  Voysest faxed a copy of the letter to Reyes's counsel.

In the letter, Voysest informed Reyes that the telephonic conference call would be his "primary opportunity to discuss . . . the reasons you disagree with the collection action and/or to

2

discuss alternatives to the collection action." Voysest asked Reyes to contact him within fourteen days if the time set for the hearing was not convenient, if the telephone contact number had changed, or if Reyes preferred a face-to-face meeting. The letter also explained in detail the issues Voysest would consider during the hearing. He explained that, in order to consider alternative collection methods such as an installment agreement or an offer in compromise, Reyes must provide a completed Collection Information Statement (Form 433-A), signed federal income tax returns for tax years 2006 and 2007, and proof of estimated tax payments for tax years 2006, 2007, and 2008. Voysest emphasized that he could not consider collection alternatives if Reyes did not provide the specified information. Voysest further explained that if Reyes did not "participate in the conference or respond to this letter, the determination and/or decision letter that we issue will be based on your CDP request, any information you previously provided to this office about the applicable tax periods, and the Service's administrative file and records." Voysest sent Reyes the applicable forms and a return envelope.

On the day set for the CDP hearing, Reyes's counsel faxed a letter to Voysest reporting a breakdown in the attorney-client relationship necessitating counsel's formal withdrawal from further representation of Reyes in all matters, including the scheduled CDP hearing. Noting that Reyes would need time to secure alternate representation, counsel asked Voysest to continue the CDP hearing.

After receiving counsel's letter of withdrawal, Voysest attempted to contact Reyes directly, using two telephone numbers for Reyes listed in the IRS file. One number was not in service and the other was disconnected. In reviewing the file, Voysest noted that Reyes's liabilities were based

on substitute for return assessments, Reyes was delinquent in filing tax returns for 2006 and 2007, and Reyes had not provided Form 433-A as previously requested. Voysest concluded that the collection alternatives Reyes sought were not viable alternatives at that time. He closed the CDP hearing, sustained the proposed collection action, and prepared the appropriate case-closing documents.

A Notice of Determination issued on January 23, 2009, sustaining the proposed levy. The Notice observed that Reyes had not disputed his liabilities, and it informed him that his request for a collection alternative could not be considered because he failed to submit his delinquent income tax returns, tax payments, and the Form 433-A as Voysest requested. The Notice further stated that rescheduling the telephonic conference was not appropriate because Reyes failed to contact Voysest after his counsel withdrew, Reyes did not seek a face-to-face meeting, and all of his liabilities for the tax years in question were based on substitute for return assessments which indicated a prior history of tax noncompliance. The Notice also determined that the proposed levy action appropriately balanced the need for efficient collection of taxes with the concern that collection action be no more intrusive than necessary. Finally, the Notice informed Reyes that he must file a petition with the United States Tax Court within thirty days if he wished to challenge the Notice.

Acting *pro se*, Reyes filed a petition with the Tax Court on February 24, 2009, challenging the Notice of Determination. He did not address his tax liabilities, the determination that he was ineligible for collection alternatives, or the IRS Office of Appeals' verification that proper procedures had been followed. Instead, he argued that he did not receive a proper CDP hearing and no law or regulation permitted the IRS to collect taxes from him.

The Commissioner moved for partial summary judgment on all issues except with respect to imposition of a penalty under 26 U.S.C. § 6673(a).[1] The Commissioner supported the motion with Voysest's declaration, the administrative record, and the Tax Court decision in the prior case. Reyes filed certain documents and an opposing memorandum in which he raised an assortment of convoluted arguments, all essentially claiming that he was not required to file federal income tax returns or pay federal income tax.

In February 2010, the Tax Court issued an Order and Decision treating the motion for partial summary judgment as a motion for summary judgment and granting it in favor of the Commissioner. The court identified the principal issue as a challenge to the existence or amount of the underlying liabilities for the six tax years in question, 1999 through 2004. With regard to tax years 2000, 2001, 2003 and 2004, the court determined that Reyes had a prior opportunity to challenge the deficiency determinations before the Commissioner and before the Tax Court when he filed the prior petition, No. 20316-07, and Reyes ultimately stipulated to the deficiencies for those tax years. The court held Reyes was barred from again challenging the existence or amount of the underlying liabilities for those four tax years, citing 26 U.S.C. § 6330(c)(2)(B).[3] Because the Commissioner conceded Reyes

[1]Section 6673(a)(1) "authorizes the Tax Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless."

[3]Section 6330(c)(2)(B) provides:

**(B) Underlying liability.**–The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not

did not receive the notices of deficiency for tax years 1999 and 2002, the court ruled that § 6330(c)(2)(B) did not bar Reyes from challenging the existence or amount of the underlying liabilities for those years.

Nonetheless, the Tax Court ruled that Reyes's challenge to the existence or amount of the underlying liabilities for tax years 1999 and 2002 consisted "solely of discredited protestor rhetoric[.]" The court found that Reyes, a United States citizen and Tennessee resident, was subject to the federal income tax and was obligated to file a federal income tax return to report his wages or other compensation. The court found that Reyes received an adequate administrative hearing, but even if he did not, no useful purpose would be served in remanding the case to the IRS Office of Appeals, given Reyes's "tax protestor agenda." Reyes was not entitled to a collection alternative, the court explained, due to his failure to comply with his federal tax obligations. Finally, the court warned Reyes that he might face a substantial penalty under § 6673(a)(1) in the future if he continued to advance frivolous arguments. The court allowed the Commissioner to proceed to collect by levy the deficiencies for tax years 1999 through 2004 as determined in the Notice of Determination dated January 23, 2009. Reyes then filed this appeal.

## II.  STANDARD OF REVIEW

We review *de novo* the Tax Court's grant of summary judgment in a collection due process (CDP) case. *Golden v. Comm'r*, 548 F.3d 487, 492 (6th Cir. 2008). Like Rule 56 of the Federal Rules of Civil Procedure, Rule 121(b) of the Tax Court Rules of Practice and Procedure provides

---

otherwise have an opportunity to dispute such tax liability.

that summary judgment may be granted "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." We review *de novo* the determinations of the IRS Appeals Office with respect to underlying tax liabilities; however, we review all other decisions for an abuse of discretion. *Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 626 (6th Cir. 2005).

### III.  ANALYSIS

The IRS Office of Appeals provided Reyes with an opportunity for a CDP hearing, and Reyes has failed to establish that his due process rights were violated. We will not consider in any depth Reyes's new contention, raised for the first time before us, that only alien individuals with green card status are residents of the United States who must file federal income tax returns and pay federal income taxes. *See Lewis v. Whirlpool Corp.*, 630 F.3d 484, 490 (6th Cir. 2011) (noting well-settled rule that we do not consider arguments made for the first time on appeal).

### A.  Reyes received a proper CDP hearing opportunity

Congress created CDP hearings with passage of the Internal Revenue Service Restructuring and Reform Act of 1998. *Living Care Alternatives*, 411 F.3d at 624. Before that Act was passed, "the IRS had the right to levy on taxpayer property without any prior opportunity for a hearing or procedural due process, so long as post-deprivation procedures were provided." *Id.* The Supreme Court sustained that approach eighty years ago, *see id*. (citing *Phillips v. Comm'r*, 283 U.S. 589 (1931)), and while the provision of CDP hearings reveals congressional intent to provide taxpayers with additional procedural protections prior to IRS action, the Act must be interpreted in its historical

7

context. *Id.* Tax levies are not typical collection actions because the IRS enjoys greater latitude than normal creditors. *Id*.

Title 26 U.S.C. § 6330(b) grants a taxpayer the right to a hearing on a notice of levy. "Proceedings are informal and may be conducted via correspondence, over the phone or face to face." *Living Care Alternatives*, 411 F.3d at 624. The hearing officer must be an impartial IRS employee who has had no prior involvement with respect to the unpaid tax. *Id.* (citing 26 U.S.C. § 6320(b)(3)). A taxpayer may challenge the underlying tax liability at the CDP hearing only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C. § 6330(c)(2)(B). In addition, any other relevant issue concerning the unpaid tax may be raised during the hearing, including spousal defenses, challenges to the appropriateness of collection actions, and alternative collection options. 26 U.S.C. § 6330(c)(2)(A). As we previously explained:

> By statute, the IRS Appeals Officer must: 1) conduct a verification that the IRS has met all legal requirements and fulfilled its procedural obligations to move forward with the lien or levy, 2) consider defenses and collection alternatives proffered by the taxpayer and, 3) make a determination that the "proposed collection action *balances* the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3) (emphasis added). This final balancing factor is novel in American tax law and injects into the calculus an equitable consideration for the taxpayer and his concerns.

*Living Care Alternatives,* 411 F.3d at 624-25. Upon completion of such review, the IRS Appeals Officer sends a final decision to the taxpayer in a Notice of Determination letter. *Id.* at 625. The taxpayer may then seek judicial review if the decision is unfavorable. *Id.*

In *Wasson v. Comm'r*, 59 F. App'x 808, 809 (6th Cir. 2003), we upheld a Tax Court ruling that a taxpayer's due process rights were not violated by the failure to conduct a CDP hearing. In that case, the IRS Appeals Officer tried to contact Wasson multiple times to schedule a CDP hearing, to no avail. *Id.* at 809. Wasson failed to present any evidence to support his claim that he contacted the IRS Appeals Officer numerous times, and Wasson did not explain his lack of response to the IRS Appeals Officer. *Id.* We held that a due process violation did not occur under these circumstances.

In this case, Voysest actually scheduled a CDP hearing, but Reyes did not appear. When Reyes's counsel withdrew from representation, Voysest tried to contact Reyes directly, but the two telephone numbers Reyes had previously provided to the IRS were useless. Reyes alleged in his petition that he contacted Voysest about rescheduling the CDP hearing and Voysest declined to set a new date for the hearing, but, like the taxpayer in *Wasson*, Reyes provided no evidence to support this claim.

Additionally, Reyes did not controvert Voysest's finding that any postponement of the CDP hearing would be futile. Although the initial indication was that Reyes wished to discuss an installment plan or an offer in compromise, he failed to provide any of the documents or payments requested and thus did not satisfy the prerequisites for consideration of collection alternatives. Therefore, Voysest acted appropriately when he declined to reschedule the CDP hearing. *See Deems v. Comm'r*, No. 10-13378, 2011 WL 1849369, at *2 (11th Cir. May 17, 2011) (unpublished per curiam) (rejecting claim that IRS Appeals Settlement Officer denied taxpayer face-to-face CDP hearing where Officer sent written communications to Deems, attempted to contact him by telephone after providing notice of the date and time for telephone conference, and Deems refused to provide

9

requested financial information or support his request to discuss collection alternatives). *Wasson* and *Deems*, although unpublished cases, are persuasive authority in support of our decision that no due process violation occurred in this case.

Voysest complied with the statutory requirements before issuing a Notice of Determination. *See Living Care Alternatives,* 411 F.3d at 624-25. He determined that he could serve as an impartial Appeals Settlement Officer because he had had no prior involvement in the case. *See* 26 U.S.C. § 6330(b)(3). He found that all legal requirements and procedural obligations had been met to move forward with the levy. *See* 26 U.S.C. § 6330(c)(1). He confirmed that there would be no spousal defenses because Reyes was single, and Reyes was not entitled to collection alternatives for the reasons previously stated. *See* 26 U.S.C. § 6330(c)(2); *Hartman v. Comm'r*, 638 F.3d 248, 250-51 (3d Cir. 2011) (per curiam) (upholding summary judgment for Commissioner where taxpayer failed to supply IRS with prerequisite filings and tax payments necessary to discuss collection alternatives). Finally, Voysest balanced the need for the efficient collection of taxes against Reyes's legitimate concern that any collection action should be no more intrusive than necessary. *See* 26 U.S.C. § 6330(c)(3)(C). All of these findings were set forth in the Notice of Determination sent to Reyes. *See* 26 U.S.C. § 6330(c)(3). Therefore, the Tax Court did not err when it determined that Reyes received a proper CDP hearing opportunity and that his due process rights were not violated.

**B. Reyes's remaining arguments are without merit**

With regard to tax years 2000, 2001, 2003 and 2004, the Tax Court correctly concluded that Reyes had a prior opportunity to challenge those deficiency determinations before the Commissioner and the Tax Court when he pursued the prior petition, No. 20316-07. Because Reyes ultimately

stipulated to the deficiencies for those tax years, the Tax Court correctly held that Reyes was barred from again challenging the existence or amount of those underlying liabilities. *See Golden*, 548 F.3d at 494-95 (observing that, if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year). With regard to the deficiencies for tax years 1999 and 2002, the Tax Court appropriately ruled that § 6330(c)(2)(B) did not bar Reyes from challenging the existence or amount of the underlying liabilities for those years, but that Reyes's challenges were nothing more than "discredited protestor rhetoric[.]"

On appeal, Reyes asserts for the first time a new argument that his domicile is within the United States, but he is not a resident of the United States as defined in 26 U.S.C. § 7701(b)(1)(A) because he is not an alien individual with green card status. Among other things, he asserts that only alien individuals are residents of the United States for purposes of filing returns and paying taxes under the Tax Code.

We decline to devote substantial time and effort to the task of unwinding Reyes's misconstruction of various Tax Code provisions. His argument is the converse of another well-known tax protestor argument based on the significance of resident status, and it is similarly lacking in merit. *See e.g.*, *Ford v. Pryor*, 552 F.3d 1174, 1177 n.2 (10th Cir. 2008) (holding as frivolous taxpayer's argument that he was not subject to the income tax because he is a "non resident alien" and awarding sanctions of $8,000); *Ambort v. United States*, 392 F.3d 1138, 1139 (10th Cir. 2004) (noting Ambort conducted tax seminars instructing attendees that, although they were United States residents, they could legally claim to be "nonresident aliens" exempt from most federal income

taxes); *United States v. Brooks*, 174 F.3d 950, 952-53 (8th Cir. 1999) (affirming taxpayer's conviction on tax charges where taxpayer claimed he was a "non-resident alien").

## IV. CONCLUSION

The Tax Court did not commit any error of fact or law when it granted summary judgment in favor of the Commissioner. The Tax Court also did not err when it warned Reyes that any future attempts to advance frivolous arguments could result in a substantial penalty against him under § 6673. Accordingly, we **AFFIRM**.