T.C. Memo. 2021-36

UNITED STATES TAX COURT

AMERICAN LIMOUSINES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4795-18L.                    Filed March 25, 2021.

P, a limousine company, is liable for unpaid employment taxes exceeding $1 million for numerous periods. R notified P of his intent to levy to collect the unpaid taxes. P requested as a collection alternative an installment agreement, and R's Appeals Office (Appeals) determined that P's reasonable collection potential (RCP) allowed for monthly installment payments of approximately $23,000. In calculating its RCP, Appeals gave P no credit for principal payments P made on vehicle loans, apparently because P had chosen to increase the size of its fleet rather than make payments of past-due employment taxes. Taking into account its vehicle loan payments, P computed that it had a monthly cashflow deficit. Nevertheless, to avoid a levy, P represented that it was optimistic about its prospects and proposed monthly installment payments of $2,000 as a "sign of good faith". Appeals rejected P's offer because, on the basis of P's own evaluation, P was unable to fund it. Appeals also determined P's account was not eligible for currently not collectible status because, although P had a negative cashflow, it had assets that could be liquidated to make payments on its past-due taxes.

**[*2]**    Held:  It was not an abuse of discretion for Appeals to reject an installment agreement that it appeared P could not fund.

Held, further, it was not an abuse of discretion for Appeals to refuse to classify P's account as currently not collectible when, even though P did not have sufficient funds to make installment payments, P had assets that could be liquidated to make payments on its past-due taxes.

Held, further, Appeals' determination to sustain the levy notice balanced the need for efficient collection of taxes with P's legitimate concern that any collection be no more intrusive than necessary when failure to levy might have jeopardized the Government's position.

Held, further, Appeals' determination that collection of P's unpaid taxes by levy may proceed.

Stephen P. Kauffman and Terry L. Goddard, Jr., for petitioner.

George E. Gurrola, for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  This case is before us to review a determination by respondent's Appeals Office (Appeals) upholding the proposed collection by levy of unpaid employment tax liabilities of $1,170,103 owed by petitioner for various calendar quarters ending September 30, 2009, through June 30, 2016, and for calendar years 2010 and 2014.  The parties have submitted this case under Rule

**[*3]** 122, which allows for the submission of a case without trial when sufficient facts have been established by stipulation or other means.[1] Petitioner assigns no error to the amount of its unpaid tax liability. It assigns as errors only that Appeals failed to accept its offer of a collection alternative and failed to properly determine whether the proposed collection action balances the need for the efficient collection of taxes with the petitioner's legitimate concern that any collection action be no more intrusive than necessary. We will sustain the determination.

## Background

### Petitioner

Petitioner is a Maryland corporation that operates a limousine transportation business. When we filed the petition, its principal place of business was in Baltimore, Maryland.

### Notice of Intent To Levy and Request for a Collection Due Process (CDP) Hearing

In June 2017, respondent issued to petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, concerning petitioner's employment tax liabilities described above.

---

[1]Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

**[*4]** In response, petitioner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153, petitioner checked boxes requesting the following collection alternatives: "Installment Agreement", "Offer in Compromise", and "I cannot pay balance at this time".

Numerous administrative proceedings followed, culminating in a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. By the supplemental notice, Appeals Team Manager Laurence P. Velazquez notified petitioner that Appeals had determined to permit collection by levy to proceed. That determination was made by Appeals Settlement Officer (SO) Kathryn E. Dugan, to whom petitioner's appeal had been assigned. Her case activity record, correspondence between her and petitioner's counsel, and a financial analysis by respondent's Compliance function tell the story.

Petitioner's Offer of Installment Payments

Petitioner had proposed to liquidate its unpaid employment tax liability by making monthly installment payments of $2,000. By letter dated May 30, 2018, one of petitioner's counsel, Stephen P. Kauffman, provided SO Dugan with the following analysis of petitioner's cashflow for 2015 through 2017 to show that it had insufficient cashflow to make greater installment payments.

[*5]

|  | 2015 | 2016 | 2017 |
|---|---|---|---|
| Business income | ($41,409) | $164,385 | $11,234 |
| +Depreciation on vehicles | 532,834 | 400,402 | 411,850 |
| −Loan principal payments | (286,736) | (542,580) | (679,881) |
| Net cashflow | 204,689 | 22,207 | (256,797) |
| Monthly | 17,057 | 1,851 | (21,400) |

Mr. Kauffman added depreciation to petitioner's business income because he recognized that depreciation was a noncash expense that did not affect cashflow. He deducted as an actual expense the principal amounts that petitioner paid on loans to purchase vehicles that it used in its business. Mr. Kauffman concluded his letter by observing that the average monthly cashflow--negative $831--was "about breakeven".

Reasonable Collection Potential (RCP)

Reviewing Mr. Kauffman's letter, SO Dugan noted in her case activity record that, considering the three-year average, petitioner "doesn't appear able to pay the $2000/mth proposed." Nevertheless, she sent petitioner's file to respondent's Compliance function, where it was assigned to a revenue officer, who was responsible for analyzing petitioner's information to determine what would be an RCP from it.

**[\*6]**  The revenue officer determined that an installment agreement requiring monthly payments of $22,877 would be appropriate.  He reached that conclusion on the basis of petitioner's financial statements for the first four months of 2018.  He determined that, for those four months, petitioner had claimed "noncash depreciation" of $137,408 and that it had paid $67,600 to its owner.  Summing those two amounts--$205,008--and annualizing, he determined available funds of $615,023, which he reduced by an "annualized loss of $65,963" to determine "$549,060 in funds available for petitioner to stay in compliance with its tax obligations and pay an installment agreement."  He did not allow for vehicle loan payments.  "To account for tight margins," he divided $549,060 by 24 to determine required monthly installments of $22,877.  He reported that determining the amount of petitioner's equity was "a complex question" but that it had an undetermined amount of equity in its real estate.

SO Dugan provided the revenue officer's calculations to petitioner's counsel, Mr. Kauffman.  He responded, saying that petitioner could not afford to make the required installment payments the revenue officer had calculated.  He criticized the revenue officer's calculations because (1) the revenue officer had treated as owner compensation amounts of tip income that petitioner held for distribution to employees, (2) he did not reduce cashflow by loan principal

**[*7]** payments that petitioner was obligated to make on its vehicle loans, and (3) a four-month analysis was not accurate because of the seasonal nature of petitioner's business.  He provided his own analysis of petitioner's RCP for the first seven months of 2018, as follows.

| | |
|---|---|
| Net income | $48,244 |
| +Depreciation on vehicles | 240,464 |
| −Loan payments | 295,251 |
| Cash deficit | 6,543 |
| Cash deficit per month | 935 |

As in his letter of May 31, 2018, he stated:  "This is just about breakeven."  He represented that petitioner's prospects are improving and reiterated that it had offered to pay $2,000 a month.  He later told SO Dugan that petitioner was not interested in an installment agreement requiring monthly payments of $22,877.

SO Dugan's Analysis

SO Dugan was not sympathetic to petitioner's insistence on an allowance for vehicle loan payments.  She noted in her case activity record that, in 2015, petitioner owned around 20 vehicles and still could have made payments of $204,689 on its tax debt.  She recognized the need for petitioner to replace vehicles, but added that, rather than paying its tax debt, by 2017 it had increased

[*8] the size of its fleet to around 28 vehicles, "leaving them in the hole $256,797 or $21,399/mth." She concluded: "The company appears to have made no real effort to pay back taxes, and may * * * be well on its way to becoming insolvent." She thought that letting Compliance proceed with collection by levy or other means would be better for the Government than agreeing to an installment agreement of $2,000 a month that petitioner would not be able to fund on the basis of its current financials.

Supplemental Notice

The parties could not agree on an installment payment plan, and, on October 4, 2018, Appeals issued the supplemental notice. The supplemental notice states that the assessment of unpaid tax was validly and appropriately made and that all legal and procedural requirements had been met. In an attachment to the supplemental notice, SO Dugan explains her rejection of the proposed collection alternatives of an installment agreement under which petitioner would make monthly payments of $2,000 or placing petitioner's account in currently not collectible status.

> In balancing the government's need to collect the liabilities, with your right to have this collection remain the least intrusive possible, Appeals considered your proposal to pay $2,000 per month. The initial collection determination provided by Collection indicates that your proposal of $2,000 per month is not sufficient, but that an

**[*9]**   installment Agreement of $22,877 would be appropriate.  Appeals offered you an opportunity to dispute these findings and/or to enter into an Installment Agreement of $22,877 per month.  You were not interested in pursuing an Installment Agreement of $22,877 per month, and disputed the Revenue Officer's findings.  Even if your principal payments on vehicle loans were allowed, as you contend they should be, your proposed Installment Agreement would still not be acceptable, because, based on your own evaluation, you are unable to fund it.  A Currently-not-Collectible status is also not appropriate at this time, because the Appeals office has determined you have an ability to make payments towards the outstanding liabilities.  Since you owe an assessed balance of $1,170,103, comprised mostly of Employment Taxes, and a mutually acceptable collection alternative was not established, levy action remains appropriate, despite its intrusiveness.

## Discussion

I.    Statutory Provisions; Standard of Review

Sections 6320 and 6330 provide a taxpayer the right to notice and the opportunity for an Appeals hearing before the Commissioner can collect unpaid tax by means of a lien or a levy against the taxpayer's property.  If a taxpayer requests a CDP hearing, the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met.  Secs. 6320(c), 6330(c)(1).  The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the collection action, including challenges to the appropriateness of collection actions and offers of collection

**[\*10]** alternatives. See sec. 6330(c)(2)(A). Section 6330(d)(1) allows a taxpayer to petition the Tax Court for review of a determination under section 6320 or 6330.

In a case where we review a collection determination pursuant to section 6330(d)(1) and there is no dispute concerning the taxpayer's underlying tax liability, we review the determination for abuse of discretion. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000); Patrick's Payroll Servs., Inc. v. Commissioner, T.C. Memo. 2020-47, at \*10, aff'd, __ F. App'x __, 2021 WL 811497 (6th Cir. Mar. 3, 2021). In reviewing for abuse of discretion, we must uphold Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). The determination must take into consideration: (1) the verification that the requirements of applicable law and administrative procedure have been met, (2) issues raised by the taxpayer, and (3) whether any proposed collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection be no more intrusive than necessary. See sec. 6330(c)(3). We limit our review of Appeals' determination to issues raised by the taxpayer. See Lunsford v. Commissioner, 117 T.C. 183, 188 (2001).

[*11] II.    Issues for Decision

On brief, petitioner identifies three issues for the Court to decide:

1. whether in calculating petitioner's RCP, respondent abused his discretion by including in petitioner's income tips belonging to its drivers;

2. whether in calculating petitioner's RCP, respondent abused his discretion by failing to reduce that potential by the principal payments petitioner made on its vehicle loans; and

3. whether respondent abused his discretion by finding that the proposed collection action (levy) balances the need for the efficient collection of taxes with the legitimate concern of petitioner that the collection action be no more intrusive than necessary.

III.    Discussion

A.    RCP

1.    Parties' Arguments

Petitioner identifies as a principal issue errors respondent made in calculating its RCP. Those errors, petitioner argues, led respondent to demand monthly installment payments of $22,877, an amount substantially in excess of the $2,000 monthly payments it offered to make. Petitioner supports the reasonableness of its offer with its own calculation of RCP. Its calculation shows

[*12] a monthly cash deficit of $935, which petitioner describes as "just about breakeven." On brief, petitioner acknowledges that its cashflow was negative for 2015 through 2017 but adds: "[I]t is optimistic about its prospects, and has offered as a collection alternative an IA of $2,000 per month as a sign of good faith."

If its 2018 cashflow was insufficient to justify an installment agreement, petitioner argues that an "appropriate alternative" would have been for respondent "to classify * * * [its] account as currently not collectible, and reevaluate at a later date." Petitioner finds support for that alternative in Internal Revenue Manual (IRM) pt. 5.15.1.16, "Cash Flow Analysis" (Oct. 2, 2012). That part of the IRM provides the following example of the IRS dealing with a business that cannot immediately, or in the short term, fully pay its tax debt:

> The cash flow analysis may show that the business can enter into an installment agreement with increasing payments, as the cash flow of the business improves. There are instances when it may be appropriate to temporarily suspend collection on a business, if the taxpayer cannot pay the delinquent taxes, but current expenses and taxes can be met and the cash flow projections indicate future ability to pay.

Respondent responds: "Even if SO Dugan would have conceded that principal on petitioner's vehicle loans should have been subtracted from petitioner's cash flow for purposes of calculating an installment agreement

[*13] monthly payment, the proposal itself demonstrated petitioner's inability to make the proposed installment agreement monthly payments."  Consequently, respondent argues that SO Dugan did not abuse her discretion in closing the case without allowing petitioner an installment agreement.  Nor did she abuse her discretion by not placing its account in currently not collectible status.

        2.      Installment Agreements

Section 6159(a) authorizes the Secretary to enter into a written agreement allowing a taxpayer to pay tax in installments if the Secretary determines the "agreement will facilitate full or partial collection of such liability."  The decision to accept or reject an installment agreement lies within the discretion of the Commissioner.  Sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.  If an Appeals officer follows all statutory and administrative guidelines and provides a reasoned and balanced decision, the Court will not reweigh the equities.  E.g., Rebuck v. Commissioner, T.C. Memo. 2016-3, at *15.

IRM pt. 5.14.1.4(4) (Sept. 19, 2014) states that, generally, installment agreements "should reflect the taxpayers' ability to pay on a monthly basis throughout the duration of agreements".  Moreover, we have held:  "[I]t is not an abuse of discretion for a SO to reject a proposed installment agreement when a taxpayer's monthly income does not support the proposed payment."  W. Hills

**[*14]** <u>Residential Care, Inc. v. Commissioner</u>, T.C. Memo. 2017-98, at *14; <u>see also</u> <u>Lipson v. Commissioner</u>, T.C. Memo. 2012-252, at *9-*10 (finding it is not an abuse of discretion for settlement officer denying taxpayer's proposed installment agreement to rely on collection information provided by taxpayer that showed inability to pay proposed monthly installments).

SO Dugan was clear in the attachment to the supplemental notice in explaining her reason for rejecting petitioner's proposed installment agreement: "Even if your principal payments on vehicle loans were allowed, * * * your proposed Installment Agreement would still not be acceptable, because, based on your own evaluation, you are unable to fund it." SO Dugan did not abuse her discretion in rejecting petitioner's proposed installment agreement. <u>See, e.g.</u>, <u>W. Hills Residential Care, Inc. v. Commissioner</u>, at *14; <u>see also</u> IRM pt. 5.14.1.4(4).

### 3. Currently Not Collectible

The Commissioner has determined that he will remove from his active inventory accounts that are currently not collectible. <u>See</u> IRM pt. 1.2.1.6.14(2) (Nov. 19, 1980) (Policy Statement 5-71). "As a general rule, accounts will be reported as currently not collectible when the taxpayer has no assets or income which are, by law, subject to levy." <u>Id.</u> at (4). The account of a business

[*15] corporation that remains in business and is current in its tax obligation but is unable to pay back taxes may be classified as currently not collectible if "enforcement cannot be taken because the business has no distrainable accounts receivable or other receipts or equity in assets." See IRM pt. 5.16.1.2.7(1) (Aug. 25, 2014). We have held in a number of cases that a settlement officer's denial of currently not collectible status is not an abuse of discretion where the taxpayer lacks sufficient income to pay its tax debt but owns assets that could be liquidated to provide funds to satisfy that debt. E.g., Clues v. Commissioner, T.C. Memo. 2015-209, at *26-*27; Riggs v. Commissioner, T.C. Memo. 2015-98, at *13. On brief, petitioner argues: "[It] is compliant with its current tax obligations and has substantial assets." The latter claim, alone, would seemingly disqualify it from currently not collectible status. SO Dugan thought that the corporation was on its way to insolvency and could not pay the $2,000 monthly installments it had proposed and that it was in the best interests of the Government for collection by levy or otherwise to proceed. Petitioner's claim on brief, unsupported by any citation of the record, that it is "optimistic about its prospects" is insufficient to raise a question in our mind that SO Dugan abused her discretion in determining not to classify petitioner's past due account as currently not

[*16] collectible.  Her decision was neither arbitrary nor capricious or without a sound basis in fact and law.  See Murphy v. Commissioner, 125 T.C. at 308, 320.

B.    Balancing

Finally, we think that SO Dugan's determination to sustain the levy notice balances the need for the efficient collection of taxes with petitioner's legitimate concern that any collection action be no more intrusive than necessary.  See sec. 6330(c)(3)(C).  The balancing test properly takes into account petitioner's specific economic realities and the consequences of a proposed collection action.  See Pazzo Pazzo, Inc. v. Commissioner, T.C. Memo. 2017-12, at *28-*29.  Undoubtedly, the collection alternative of an installment agreement would be less intrusive than a levy.  That being so, SO Dugan considered petitioner's financial situation and tax history and gave reasoned explanations for her rejection of petitioner's proposed collection alternatives.  She thought that the corporation was on its way to insolvency, that it could not pay the $2,000 monthly installments it had proposed, and that it was in the best interests of the Government for collection by levy or otherwise to proceed.  "[T]he government is not required to continue subsidizing failing businesses by foregoing tax collection."  W. Hills Residential Care, Inc. v. Commissioner, at *16 n.9 (quoting Living Care Alts. of Utica, Inc. v.

**[\*17]** <u>United States</u>, 411 F.3d 621, 628 (6th Cir. 2005)).  She did not abuse her discretion.

IV.   <u>Conclusion</u>

Because Appeals did not abuse its discretion in approving the proposed levy action to collect petitioner's unpaid employment taxes, we will sustain Appeals' determination.

<u>Decision will be entered for</u>

<u>respondent</u>.